David V. MCFARLAND,
Plaintiff–Appellee,

v.

GENERAL AMERICAN LIFE
INSURANCE COMPANY,
Defendant–Appellant.

No. 97–2905.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1998.

Decided July 6, 1998.

Martin J. Mengarelli (argued), Granite City, IL, Robert Bosslet, Chapman Law Offices, Granite City, IL, for Plaintiff–Appellee.

Eric D. Martin, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, MO, Richard J. Pautler (argued), Thompson & Coburn, St. Louis, MO, for Defendant–Appellant.

Before RIPPLE, MANION and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

David McFarland, a citizen of Illinois, brought an action in Illinois circuit court seeking a declaratory judgment stating that he is entitled to insurance benefits under an insurance policy issued to him by General American Life Insurance Company. General American, a Missouri corporation with its principal place of business in St. Louis, sought and obtained removal of the action to the United States District Court for the Southern District of Illinois on the basis of federal diversity jurisdiction. Upon cross-motions for summary judgment, the district court granted judgment in favor of Mr. McFarland; it held that he is entitled to disability benefits under the General American policy. General American now appeals. For the reasons stated in the following opinion, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

# I

## BACKGROUND

### A. Facts

David McFarland is the owner and operator of a heating and air conditioning business in Granite City, Illinois. In February 1989, Mr. McFarland purchased a Disability Income Policy from General American. The policy sets up two stages of coverage. First, the policy affords a type of disability coverage termed by most courts "occupational disability" insurance.[1] This coverage is available under the General American policy for up to 60 months, and is triggered if Mr. McFarland is "totally disabled" such that he is "unable to perform the material and substantial duties of [his] regular occupation." R.2 Ex.A. Following the 60–month period, the General American policy provides for traditional "general disability" insurance which is available to Mr. McFarland only if he is "unable to perform the material and substantial duties of any gainful occupation in which [he] reasonably may be expected to engage." *Id.*

---

1. *See, e.g.,* A.M. Vann, Annotation, *Insurance: "total disability" or the like as referring to inability to work in usual occupation or in other occupations,* 21 A.L.R.3d 1155, 1160, 1968 WL 15816 (1968) (describing occupational disability insurance as that which "by its terms, requires only that the insured be unable to perform the duties of his particular occupation in order to be considered 'totally disabled' ").

The issue before us today involves the first stage of coverage and therefore requires that we determine the meaning of the phrase "unable to perform the material and substantial duties of your regular occupation at the start of Disability." On his application to obtain the insurance policy, Mr. McFarland defined his occupation as "Executive–Contracting Co." and he indicated that his duties entailed "supervis[ing] corporate activities, supervisors, prepar[ing] estimates for bid." *Id.*

In October 1993, Mr. McFarland suffered a hernia. Despite the injury, he returned to work in a limited capacity on that same day. On November 27, 1993, Mr. McFarland injured his left knee; as a result, he subsequently underwent two surgeries. The knee injury caused Mr. McFarland to miss work from November 29, 1993 to December 14, 1993. Although he returned to work on December 15, 1993, Mr. McFarland continued to experience pain and discomfort and he was unable to perform a number of his duties.

On August 7, 1995, Mr. McFarland filed two Proof of Claim forms with General American requesting disability payments on the basis of his hernia and knee injury. As detailed by an exhibit attached to one Proof of Claim, Mr. McFarland's ability to perform his normal duties was reduced significantly following his injuries. *See* R.23 Ex.A to Ex.1. Specifically, as the case comes to us, both parties agree that Mr. McFarland is now only able to perform 35% of his former duties.[2] *See id.* As detailed in the Proof of Claim, this reduction in performance included Mr. McFarland's complete inability to perform some aspects of his job such as supervising field jobs, unloading and loading trucks and deliveries, and making service

calls, as well as a reduced capacity to provide field job estimates, which he indicated was 40% of his normal job duties. Mr. McFarland's physician's statements regarding the "extent of disability" in the Proof of Claim forms indicate that Mr. McFarland is "[u]nable to bend, squat, lift, climb or walk to extent necessary" and that the physician considers Mr. McFarland to be "continuously unable to work in his/her occupation." R.23 Exs.1 & 2. However, Mr. McFarland continues to work and to oversee his business, and he is able to perform his corporate and other office-related activities.

On January 22, 1996, General American denied Mr. McFarland's request for disability benefits because it believed that Mr. McFarland was not "totally disabled" within the meaning of the policy. The denial letter stated that he was only partially disabled, and thus did not satisfy the definition of totally disabled contained in the policy. Mr. McFarland brought this action to obtain a declaratory judgment establishing his entitlement to disability benefits under the policy.

## B. Proceedings in the District Court

After the case was removed by General American to federal court, the parties each filed motions for summary judgment. General American's position was that, because Mr. McFarland was able to perform 35% of his duties, he was not unable to perform the "material and substantial duties of [his] regular occupation" and therefore was not totally disabled. In contrast, Mr. McFarland argued that the policy language was ambiguous with respect to the degree of inability required to establish total disability and that a person who could perform less than half of his regular duties was totally disabled within the meaning of the policy. The district court agreed with Mr. McFarland and concluded

---

**2.** Although General American has intimated in its brief that Mr. McFarland's description of his job in his application for disability is substantially different from the one he gave at the time he applied for coverage, it does not argue that there is a genuine issue of fact regarding the scope or substance of Mr. McFarland's job responsibili-

ties. Nor does it argue that he has described his responsibilities in a fraudulent manner. Instead, General American's position is that, conceding that Mr. McFarland was reduced to 35% of his former duties, he was not "totally disabled" within the meaning of the policy.

that the policy was ambiguous with respect to "how much of a disability it covers." R.29 at 5. Finding that it was ambiguous, the district court then resolved the ambiguity in favor of Mr. McFarland and held that he was entitled to benefits under the policy.

## II

## DISCUSSION

### A.

This case is before us on appeal from the grant of summary judgment; we review de novo such a grant. *See Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107 (7th Cir.1998). Summary judgment is appropriate when the pleadings and other submissions to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Because this is a diversity case, we look to state law to provide the substantive law regarding interpretation of the insurance policy. *See, e.g., Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Moreover, in situations like the one before us in which the parties do not dispute that the forum state's law controls and there is no choice of law provision in the contract, we need not investigate whether another forum's law would be more appropriate. *See Wood v. Mid–Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

■ Under Illinois law, this court must "ascertain the intent of the parties to the contract by construing the policy as a whole while giving due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *Employers Ins. v. James McHugh Constr. Co.*, 144 F.3d 1097, 1104–05 (7th Cir.1998) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 607 N.E.2d 1204, 1212 (1992)). We are to attribute to the policy's "unambiguous words their plain and ordinary meaning." *Allen*, 128 F.3d at 466. In the event that we determine a provision is ambiguous, Illinois law requires that any ambiguities be resolved in favor of the insured. *See id.* A provision is ambiguous if it is reasonably susceptible to more than one interpretation. *See Employers Ins.*, 144 F.3d at 1104–05. With these principles in mind, we turn to the parties' submissions regarding the proper interpretation of the disability insurance policy.

### B.

### 1.

■ In order to obtain benefits under the disability policy, Mr. McFarland had to establish that he was "totally disabled." As we have noted earlier, a person is "totally disabled" under the policy if he is "unable to perform the material and substantial duties of [his] regular occupation." The outcome of this case turns on the construction of the terms "the material and substantial duties." It is undisputed that Mr. McFarland, after his injuries, was unable to perform 65% of his former duties. However, the parties do dispute whether this reduction in ability means that Mr. McFarland is "unable to perform the material and substantial duties of [his] regular occupation."

Mr. McFarland's position is that the policy language is ambiguous with regard to the extent of the disability required to trigger the policy's coverage. He contends that the policy language covers not only those situations in which a person is completely unable to perform *any* of his former duties but also those situations in which a person is unable to perform *most* of the material and substantial duties of his occupation. In submitting this argument, Mr. McFarland implicitly appears to recognize that an alternative reading of the language would be that a person is only totally disabled if he is completely unable to perform any of his material and substantial duties. Such an interpretation, of course, would preclude Mr. McFarland from

receiving disability benefits because he concedes that he is able to perform some of his former duties.

General American submits that the policy language is not ambiguous but rather sets up a workable and flexible standard for the determination of total disability. In its view, the term "regular occupation" provides a "benchmark" against which to measure the terms "material and substantial." To illustrate this point, General American offers a professional baseball analogy to explain how the policy language should be applied in settings, like this one, in which an injury or sickness results in the inability to perform some significant portion of one's former duties. General American states that if a shortstop, whose principal duties include running, hitting, catching and throwing, were injured such that he could no longer throw, he would be totally disabled because he could no longer be employed as a shortstop. Even though the shortstop could still run, hit and catch (a significant portion of his duties), throwing is an essential function for a shortstop and thus the inability to throw means that he is unable to perform "the material and substantial duties" of his occupation. He would be totally disabled because he could no longer perform a core or essential duty of his regular occupation.[3]

However, General American continues, if the shortstop was a good hitter and happened to be in a league that allowed him to act as a designated hitter (the American league), then he would not be totally disabled because he would still be capable of maintaining his employment as a baseball player, his "regular occupation."[4] General American submits that Mr. McFarland is like the second shortstop; he is not totally disabled because he is still able to perform enough of his duties to continue his occupation as the owner and operator of his business.

**2.**

We can walk half the distance down the road that General American asks us to walk. We cannot agree with our colleague in the district court that the policy language is ambiguous. In our view, when the language of the pertinent clauses is read in its entirety and when those clauses are read in the context of the entire policy, it is clear, as we understand General American to contend, that the policy protects the insured from disabilities that prevent his continuing in his regular occupation. We think that the plain import of the language of the policy is clear. When the insured cannot perform a sufficient number of his material and substantial duties and is therefore precluded from continuing the employment he undertook before the disability, this first type of coverage provides compensation for five years. At the expiration of that time period, this coverage expires. The expectation is that, by that time, the insured will have made the necessary adjustment to another line of work or, if that is not possible because of the severity of the disability, will qualify for continued benefits under that second type of coverage afforded under the policy, the general disability coverage.

We stress, as General American concedes in its reply brief before this court, that the language of the policy does not render the insured ineligible for coverage under the occupational disability coverage simply because he can perform several functions that are "material and substantial." Rather, coverage is present as long as the number of "substantial and material" duties that cannot be performed precludes continuation of employment in the position held before the disability. Nor do we believe that the policy can be read in a principled manner to limit coverage

3. *See Ginsburg v. Insurance Co. of North America,* 427 F.2d 1318, 1320 (6th Cir.1970) (stating that, in context of general disability policy, "[s]ince there was at least one essential task which appellant could not perform" she was totally disabled because she could not perform "every duty" of her occupation).

4. Other cases have explored the meaning of "regular occupation" in similar disability insurance

contexts, and some courts probably would not conclude that a shortstop and a designated hitter are employed in the same occupation. *See Oglesby v. Penn Mut. Life Ins. Co.,* 877 F.Supp. 872 (D.Del.1994) (holding that physician's regular occupation was subspecialty of radiology and therefore his ability to perform general radiology duties did not preclude him from obtaining benefits for total disability).

to situations in which there is a formal change in position or title. Rather, we think that the contract, read as a whole, requires coverage whenever there is a substantial change in the responsibilities, terms or conditions of one's occupation.

The purpose of the policy is to protect the individual whose economic expectations and commitments are disrupted by a change in occupational status due to injury or sickness. We can envision two broad categories of disability that might require a determination of total disability under the General American policy. The policy language could be interpreted reasonably to cover both qualitative and quantitative reductions in one's performance as a result of an injury or sickness.

A qualitative reduction would be one like that proposed by General American's baseball analogy. In that example, the first shortstop was no longer able to perform one core and essential aspect of his job (throwing) as a result of an injury. This disability, while affecting only one of several core skills, would be enough to prevent him from continuing to perform as a shortstop. We agree with General American that a person purchasing disability insurance with the definition of totally disabled at issue here would reasonably expect that, if he was no longer able to perform an essential duty of his regular occupation, resulting in the loss of his position, he would be "totally disabled." *See Goldstein v. Lincoln Nat'l Life Ins. Co.,* 970 F.Supp. 598, 603 (E.D.Mich.1997) (reviewing *Turner v. Fidelity & Cas. Co.,* 112 Mich. 425, 70 N.W. 898, 899 (1897), which indicated that barber who is deprived of use of his right hand, thereby rendering him unable to perform certain duties but still able to do others, would be totally disabled). This would be the case even if, in percentage terms, the disability affected an essential duty that comprised, for example, only 5% of the person's overall duties.

In contrast with an injury or sickness resulting in a qualitative performance reduction, a quantitative performance reduction would be one in which the injury or sickness would not physically prevent an employee from performing any given task, but the injury instead renders the person unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation. Therefore, although the person is still able to perform the actual tasks themselves, the person is reduced perhaps to 25% of the prior output. We think it possible that a reasonable interpretation of the policy language would indicate that a person whose quantitative performance was greatly reduced would also no longer be able to perform the "material and substantial" duties of his occupation.

### 3.

We now must determine whether the record before us permits a determination that Mr. McFarland suffered from a total disability as that phrase is employed in the policy. Several factors counsel against such a course. First, although the case was before the district court on cross-motions for summary judgment, our examination of the record makes it clear that the parties focused on whether the insurance contract was ambiguous, not on whether the evidence of record supported the claim that Mr. McFarland was totally disabled in the sense that we have described. Moreover, after determining that the language of the contract was ambiguous, the district court did not state explicitly that the circumstances presented by Mr. McFarland present grounds for recovery.

We are aware that, on the record before us, the parties assume that Mr. McFarland's injuries allowed him to perform only 35% of his former duties. Mr. McFarland also asserts that the duties he was prevented from performing included those that were central to his duties of estimating the cost of proposed projects and supervising his workforce. What cannot be ascertained is whether this disruption in Mr. McFarland's occupational activities amounts to an inability to function as owner and operator of the corporation as he functioned prior to his disability. Although the record suggests that he has retained the title, it is not clear whether he has been able to retain the remuneration and authority that he earlier enjoyed.

Accordingly, we remand the case to the district court for further proceedings consistent with this opinion.

## Conclusion

For the foregoing reasons, we vacate the judgment of the district court and remand the case for proceedings consistent with this opinion. The parties shall bear their own costs of this appeal.

VACATED AND REMANDED.