In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3137

HENRY FIORENTINI,

*Plaintiff-Appellant,*

*v.*

PAUL REVERE LIFE INSURANCE COMPANY,
a Massachusetts Corporation, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15–cv–03292 — **Charles R. Norgle**, *Judge.*

ARGUED APRIL 11, 2018 — DECIDED JUNE 21, 2018

Before BAUER, SYKES, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Henry Fiorentini is the owner and
president of Panatech, Inc., a small technology company.
When cancer treatment left him unable to perform his job, he
received total disability benefits under a policy he held with
the Paul Revere Life Insurance Company. Five years later,
after Fiorentini was back at work and exercising full control
of the company, Paul Revere notified him that he no longer

qualified for the benefits. Fiorentini argued that he still satis-
fied the policy's requirements for total disability, because
even though he could perform most of his job duties, he was
unable to do what it takes to generate new business. Paul
Revere rejected that argument, and Fiorentini sued it for
breach of contract. We agree with the district court that
Fiorentini does not qualify for total disability coverage un-
der his policy.

## I.

In 1982, Henry Fiorentini founded Panatech Computer
Management, Inc., a small information-technology company
that specializes in providing customized software to small
businesses. In 1998, he was diagnosed with invasive basal
cell carcinoma of the right ear. After minor surgeries failed to
remove the cancer, Fiorentini had his right ear amputated in
2008. Several more surgeries and radiation followed, leaving
him with permanent hearing loss, fatigue, migraines, dry
mouth, tinnitus (a constant ringing sound), and an inability
to localize sound. To compensate for the amputation, Fioren-
tini received a prosthetic ear that is virtually indistinguisha-
ble from his left ear.

After the surgery, Fiorentini submitted a claim for "total
disability" benefits under an occupational disability insur-
ance policy he had purchased from the Paul Revere Life In-
surance Company. The policy defines the key terms for total
disability coverage as follows:

> "Total Disability" means that because of Injury or Sick-
> ness … You are unable to perform the important duties
> of Your Occupation.

> "Your Occupation" means the occupation in which You
> are regularly engaged at the time You become Disabled.

Fiorentini listed his occupation as "President & Owner" of Panatech and said that his occupation entailed four "important duties": sales (6–8 hours per week), consulting/meetings (7–10 hours per week), programming (15–25 hours per week), and administrative work (2–3 hours per week). Concluding that Fiorentini was unable to perform these duties, Paul Revere approved his claim and began paying total disability benefits in February 2009.

Five years later, Paul Revere notified Fiorentini that he no longer met the total disability requirements of his policy. He had been cancer-free since 2009 and was working regularly again. He continued to suffer side effects from the surgery and worked fewer hours than he had before. Nonetheless, he was now well enough that he was exercising full control over Panatech.

While it found him ineligible for total disability benefits, Paul Revere invited Fiorentini to apply for "residual disability" benefits under his policy. Coverage under that provision would have required Fiorentini to show that he was either unable to perform "one or more of the important duties" of his occupation or could only perform his important job duties for "80% of the time normally required to perform them" and that he earned at least 20% less than he did pre-disability. Fiorentini did not submit that information; instead, he let his policy lapse and sued Paul Revere, seeking damages for breach of contract, statutory penalties for unreasonable and vexatious conduct under Illinois law, and a declaratory judgment. The district court entered summary judgment for Paul Revere.

II.

Fiorentini argues vigorously that the "total disability" clause covers him even though he can still do almost everything his occupation requires him to do. He does not dispute that he is able to perform three of the important duties listed on his claim for total disability benefits: consulting with clients, programming, and administrative duties. His claim turns on his alleged inability to perform the fourth, which he characterizes as essential: sales. Ever since Fiorentini's surgery, Panatech has survived exclusively on work from its existing clients. Fiorentini says that he is the only one who can bring in new clients, and that he can do so only by meeting personally with prospects, giving presentations, and attending seminars. That kind of face-to-face contact is allegedly impossible for him because of his continuing symptoms, including tinnitus and fatigue. He dismisses the suggestion that he could solicit new business through phone calls, emails, the internet, or a marketing company; for his small business, he says, only in-person contact will do.

Fiorentini's claim that his inability to execute one task renders him "unable to perform the important duties of [his] Occupation" seizes upon an opening in our case law. While we have refused to hold that the inability "to perform one task is always sufficient for total disability," *Cheney v. Standard Life Insurance Co.*, 831 F.3d 445, 452 (7th Cir. 2016), we have acknowledged that the inability to perform one task might sometimes qualify under similarly worded policies. For example, in *McFarland v. General American Life Insurance Co.*, we noted that a shortstop who could no longer throw would be unable to do his job even if he could still run, hit, and catch. 149 F.3d 583, 588 (7th Cir. 2016). Fiorentini asserts

that in-person solicitation is to him what throwing is to a shortstop—utterly essential. And because he can't sell, he can't do his job even if he can program, consult with existing clients, and do administrative tasks.

Fiorentini's analogy is inapt. A shortstop who can't throw can't be a shortstop; Fiorentini, on the other hand, functions daily as Panatech's president. While his capacity as Panatech's president has been diminished by his inability to perform one of his important duties, he is not unable to continue his occupation. And critically, the total disability provision does not cover the insured who has a *diminished ability* to perform his occupation, but rather the insured who is *unable* to continue it. *See McFarland*, 149 F.3d at 587 (interpreting a similar total disability policy to "protect[] the insured from disabilities that prevent his continuing in his regular occupation"). The unambiguous language of an insurance policy controls in a coverage dispute. *See Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003–04 (Ill. 2010).

Fiorentini's ineligibility for benefits under the total disability provision of the policy is underscored by the policy's provision for residual disability benefits. Fiorentini says that he cannot perform one of his four important duties; the residual disability provision applies when "You are unable to perform one or more of the important duties of Your Occupation." This is the clause that fits a claim like Fiorentini's. It protects an insured whose disability has reduced but not eliminated his capacity to work, so long as he is earning at least 20% less as a result.

All of this said, we would affirm the district court even if we agreed with Fiorentini that making sales is essential to his occupation—and, for that matter, that face-to-face contact

is the only way he can do it. Even if the language of the policy were on his side, Fiorentini has a problem of proof: the evidence would not permit a reasonable juror to conclude that he is unable to meet with potential clients in person.

Fiorentini's own testimony contradicts his claim that he is unable to make face-to-face sales pitches. He admits that he meets regularly with existing clients at their businesses or over lunch; he also visits job sites weekly to discuss and address computer problems. Fiorentini offers no explanation for why he can meet with existing clients but not potential clients. Indeed, his own vocational expert conceded that he is currently able to conduct face-to-face meetings on a "limited basis," and his own surgeon confirmed that he can "hear and communicate" in one-on-one meetings.

Fiorentini's off-the-job activities also undercut his contention that his symptoms render him mentally and physically unable to meet personally with potential clients. In 2013, Fiorentini renewed his pilot's license—which he had originally obtained in the 1980s but had permitted to lapse—and bought an airplane. He spends 75–80 hours a year flying around the Midwest, primarily to have breakfast with other recreational pilots. And while Fiorentini claims that he can't put on work-related presentations to sell Panatech's product, he conducted a 90-minute seminar for other flying enthusiasts about an iPad application called ForeFlight. Nor is flying Fiorentini's only hobby. Just as his symptoms have not kept him out of the air, they have not kept him off the ice: Fiorentini plays in a weekly adult hockey league.

To be sure, the record supports the inference that Fiorentini cannot discharge his duties as Panatech's president in precisely the same manner as he did before. The ongoing ef-

fects of his surgery—hearing loss, tinnitus, migraines, and difficulty localizing sound—have had an adverse impact on his daily functioning. But as we have already said, a reduced capacity to perform job duties is addressed by the policy's "residual disability" provision. Fiorentini chose not to apply for those benefits.

### III.

Fiorentini bears the burden of proving that his loss falls within the terms of his insurance policy. *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 496 N.E.2d 1176, 1179 (Ill. App. Ct. 1986). His alleged inability to perform one of his four important job duties—sales—does not. Even if it did, and even if we credit the claim that he cannot make sales without in-person meetings, the evidence construed most favorably to him would not permit a reasonable juror to conclude that he is unable to meet with potential clients face-to-face. The judgment of the district court is AFFIRMED.