Thomas Russell Jones, J.
The plaintiff is a physician and surgeon, specializing in the private and hospital practice of obstetrics and gynecology. He brings this action to recover the sum of $10,677.34 under a policy of health and accident insurance issued to him by the defendant company in 1964. The policy entitled plaintiff to receive $770 per month for 24 months during any period when he was totally disabled. Total disability was defined in the contract as occurring whenever plaintiff suffered ‘ ‘ complete inability to engage in his regular occupation.” In February, 1967, the plaintiff suffered a heart attack and was compelled to discontinue his specialized practice. After his recovery, he accepted employment as the director of family planning and sex education for Coney Island Hospital. In the new position plaintiff used the skills and knowledge which he possessed as a physician and surgeon but no longer performed surgery or obstetrics.*
*148 The jury returned a verdict for plaintiff and thereby determined that plaintiff was totally disabled from performing his regular occupation, as a physician and surgeon. Pursuant to stipulation, a judgment has been rendered for plaintiff in the sum of $10,677.34 with interest from October, 1967, and costs.
The defendant has now moved to set aside the verdict and seeks judgment in its favor. The plaintiff has moved pursuant to subdivision (a) of CPLR 8303 for an additional allowance of costs because the case presented extraordinary difficulties before and during trial. The defendant’s motion is denied. Plaintiff is granted additional allowance for costs in the sum of $538.87.
The defendant contends that, as a matter of law and fact, the plaintiff was not totally disabled from engaging in his regular occupation as a physician and surgeon, because he continued to use his medical skills and knowledge in his new occupation as the director of a hospital family planning and sex education unit. Defendant claims that the plaintiff was still engaged in his chosen profession because he participated in gynecological clinics and occasionally made medical diagnoses. The defendant points to the fact that plaintiff yarned more in his new job than he did before his heart attack.
THE DEFENDANT’S MOTION TO SET ASIDE THE VERDICT
AND FOR JUDGMENT
The question to be determined is whether the verdict was correct, as a matter of law, when the jury found that the plaintiff was totally disabled under the terms of the insurance policy which defined total disability as “ the complete inability of the insured to engage in his regular occupation ’ ’. By its verdict, the jury accepted the plaintiff’s theory and proof that, as a result of a heart attack, he was no longer able to perform gynecological surgery or deliver babies. These findings of fact will not be disturbed by this court. By implication, the jury has also found that female surgery and obstetrics were substantial and material acts pertaining to the plaintiff’s practice of medicine and surgery. By inference, the jury has likewise found that the plaintiff’s new occupation did not involve any substantial part of the ordinary duties of his former occupation.
Health and accident insurance policies are usually designed to indemnify against loss of capacity to work, not against loss of income (Continental Cas. Co. v. Carlisle, 391 S. W. 2d 98 [Texas]; Bachman v. Travelers’ Ins. Co., 78 N. H. 100; 6 Cooley, Briefs on Ins. 2d 5536). Therefore plaintiff’s larger income from a new occupation will not bar recovery under his disability policy.
*149 Disability provisions in insurance policies generally fall into two categories: the “ occupational ”, which indemnifies the assured when he becomes disabled from performing substantially all the material acts necessary to his chosen profession (Ann. 21 ALB 3d 681; 31 N. Y. Jur., Insurance, § 1373); and the 1 ‘ general ’ ’ which indemnifies the policyholder when he becomes totally incapable of following any occupation for profit (15 Couch, Insurance [2d ed.], § 53:45).
This case requires the interpretation of an occupational indemnity policy. By the terms of its contract, the company undertook to make cash monthly payments to the assured when it was established that he had become completely unable to engage in his regular occupation.
The law is clear that contracts of insurance, like other contracts, are to be construed according to the plain sense and ordinary meaning of the terms used by the parties (cf. Preston v. Aetna Ins. Co., 193 N. Y. 142, 144). Such contracts must be reasonably construed; not according to the interpretations of scientists but the concepts of average men (cf. Lewis v. Ocean Acc. & Guar. Corp. Ltd. of London, 224 N. Y. 18, 20, 21); and given practical application (cf. Williams v. John Hancock Mut. Life Ins. Co., 245 App. Div. 585, 587). A stricter rule of law than this is applied to protect insured persons. New York courts have declared that ‘ ‘ the terms of an insurance policy will receive the construction most favorable to the insured (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442) ”; (Matter of Vanguard Ins. Go. [Polchlopek], 18 N Y 2d 376, 381; Bachrach v. Mutual of Omaha Ins. Co., 38 A D 2d 897, 898). Occupational disability policies are devised and sold by insurance companies to protect individuals when they are disabled from pursuing their particular occupations. The courts of this State have uniformly held that total disability in particular occupations occurs when the assured is found to be incapacitated from performing any substantial part of his ordinary duties, notwithstanding that he can still perform some of the duties pertinent to his profession (cf. Neafie v. Manufacturers’ Acc. Indi Co., 55 Hun 111; Harasymczuck v. Massachusetts Acc. Co., 127 Misc. 344; Collis v. Massachusetts Bonding & Ins. Co., 236 App. Div. 525, affd. 264 N. Y. 447).
In the case of McGrail v. Equitable Life Assur. Soc. (292 N. Y. 419, 425) the New York Court of Appeals (April, 1944) said that an insurance contract which provided for the payment of weekly benefits to a physician when he became totally disabled from performing “ any and every duty pertaining to his occu *150 pation ’ meant when the assured was found to he ‘1 unable to continue his profession * * * as a doctor, as a physician and surgeon.” The unanimous court in McGrail determined that the strict phrase, “ any and every duty ” when applied to a physician should be given a reasonable interpretation. The court declared that the jury must determine whether the insured was capable of performing any of his duties as a doctor. In this regard the court adopted the view expressed in Wolcott v. United Life & Acc. Ins. Assn. (55 Hun 98) to the effect that “total disability” was a relative matter and depended upon the occupation of the insured. The Wolcott court said that a physician became “totally disabled” when he was unable to practice medicine and surgery, enter his office and make calls upon his patients, notwithstanding that he could still exercise his mind and make use of his acquired training. New York Jurisprudence (vol. 31, Insurance, § 1372) summarizes the case law references on total disability clauses in insurance contracts as follows: ‘ ‘ such clause contemplates such a disability as renders the insured unable to perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner. The fact that the insured is able to perform some inconsequential, trivial or incidental duties connected with his usual employment or occupation does not preclude recovery under a total disability provision, regardless of its particular phrasing.” (emphasis supplied; cf. Warren v. Commercial Travelers Mut. Acc. Assn, of Amer., 199 Misc. 864).
The “ substantial performance ” measure of disability is followed in many other jurisdictions. The United States Court of Appeals for the Fifth Circuit, in Standard Acc. Ins. Co. v. Bittle (36 F. 2d 152, 154) defined total disability as follows: “ A disability is total if it prevents the party suffering it from performing acts necessary to the prosecution of his business in substantially the customary and usual manner, and does not mean a state of absolute helplessness or inability to perform, at peril to health, some of the acts required in the conduct of a business or occupation.”
The Supreme Court of Arkansas, in Aetna Life Ins. Co. v. Spencer (182 Ark. 496, 501) said that total disability provisions in a policy “ do not require that [an assured] shall be absolutely helpless, but such * # * which renders him unable to perform all the substantial and material acts of his business * * * in the usual and customary way.”
The Missouri Court of Appeals in Parks v. Maryland Cas. Co. (230 Mo. App. 383, 397) declared: “ to make these disability *151 clauses workable, so as not to deprive the insured of the protection intended, the courts have refused to apply the term total disability in a technical sense. If the insured is so far disabled that he cannot perform, as a whole the substantial duties of his occupation, even though he may be able to perform some of his duties, he is totally disabled within the meaning of the policy.”
The United States Court of Appeals for the Second Circuit in Dixon v. Pacific Mut. Life Ins. Co. (268 F. 2d 812, cert. den. 361 U. S. 948) declared that a physician-surgeon who was unable to practice surgery because of dermatitis of his hands was totally disabled notwithstanding that he used his skills as a hospital superintendent and treated patients occasionally. The court said (p. 815): “Quite frequently * * * cold logic can be most unrealistic. Carried to extreme's, it could be asserted that so long as plaintiff retained his license to practice he was not totally disabled. The policy and the word ‘ occupation ’ cannot be so narrowly construed. Occupation is the occupation of the individual policy holder. It is the ability to continue his particular occupation for which he seeks protection by insurance. If his occupation has become that of a recognized specialist in surgery and he suffers from a physical impairment or disease * * * dermatitis, resulting in the forced discontinuance of his practice for all practical purposes there is total disability. He can no longer pursue his real occupation.”
The Circuit Court in Dixon said that a physician’s disability policy is broad enough to encompass the physician’s specialty; and observed (p. 815) that: “ Over the last several decades there has been an increasing tendency in the field of medicine to specialize. Even in surgery there are many fields. If a physician has spent his life as a neurosurgeon or an ophthalmic surgeon he is effectively deprived of his occupation if illness prevents his continuing in that particular field.”
In Ayres v. New York Life Ins. Co. (219 La. 945, 951) the Louisiana Supreme Court declared, in the case of an oil field worker stricken with sciatica, who changed jobs because of his ailment, that total disability did not require absolute helplessness, only inability to substantially perform all the material acts of his occupation.
The Maryland Court of Appeals, in Massachusetts Cas. Ins. Co. v. Rief (227 Md. 324, 328) said that for a ragman who changed jobs because of a heart attack, occupational disability meant that the insured was ‘ ‘ unable to perform the substantial and material acts of his own occupation in the usual or customary way”.
*152 There is ample evidence in this case to support the jury’s finding that the plaintiff’s occupation as consultant in sex education and family planning for Coney Island Hospital did not constitute the practice of medicine, far less the practice of gynecology and obstetrics. Handicapped as he was by the aftereffects of a severe heart attack, the plaintiff was not called upon to abjure the use of his valuable medical knowledge, when he sought to rehabilitate himself. In fact he could reasonably be expected to make the maximum use of such skills as he possessed to rebuild his shattered life. This court will not give a strained interpretation to the contract, nor foreclose the physician from the promised benefits of his contract because he has used some of his acquired knowledge and medical training in his new occupation. Lacking unequivocal language to such effect, this court will not compel an insured professional man to march backward toward obscurantism and ignorance in order to receive the benefits of a policy which he purchased to protect himself if he became incapable of practicing his chosen calling. The motion of the defendant for judgment notwithstanding the verdict of the jury is therefore denied.
THE PLAINTIFF’S MOTION FOB AN ADDITIONAL COST ALLOWANCE.
CPLB 8303 (subd. [a], par. 2) empowers the court with discretion to award an additional allowance: “ to any party to a difficult or extraordinary case, where a defense has been interposed, a sum not exceeding five per cent of the sum recovered or claimed, or of the value of the subject matter involved, and not exceeding the sum of three thousand dollars; ”.
The granting of such an additional allowance pursuant to the provisions of the statute rests solely in the sound discretion of the court (Abbott v. Page Airways, 23 N Y 2d 502, 515).
The court is satisfied that the plaintiff’s attorney expended an extraordinary amount of time and effort in preparing this case for trial. There appeared to be considerable medical and legal research by counsel in preparing expert witnesses for trial. The special knowledge required to conduct the trial unquestionably involved many hours of study in another discipline, i.e., medicine and surgery. The trial covered a full week. All of these factors together with many imponderable aspects of the case as it proceeded make an additional allowance appropriate' and just. Therefore, in the exercise of discretion, the court grants plaintiff’s motion and awards him an additional allowance for costs in this action of 5% of $10,677.34 recovered, in the sum of $538.87 (cf. Schwartz v. Bartle, 51 Misc 2d 215, 217; Ryan v. City of New York, 159 App. Div. 105).

 Note is taken that gynecology is a branch of medicine and surgery which deals with the treatment of diseases and disorders of the female urino-genital tract. It includes surgical procedures for the removal of tumors and diseased reproductive organs. Obstetrics is a branch of surgery which deals with the management of pregnancy, labor and childbirth (Schmidt’s Attorneys’ Dictionary of Medicine).