**Joseph D. GIAMPA, Plaintiff,**

v.

**TRUSTMARK INSURANCE COMPANY and Continental Assurance Company, Defendants.**

No. Civ.A. 97–11977–PBS.

United States District Court,
D. Massachusetts.

Feb. 26, 1999.

Edmund Polubinski, Law Office of Edmund Polubinski, Jr., David F. Cavers, Jr., Law Office of David F. Cavers, Jr., Boston, MA, for Plaintiff.

Joseph H. Skerry, III, Law Offices of Ronald, Martignetti, Boston, MA, Kimberly Stanton, Lyne, Woodworth & Evarts, Andrew T. Savage, Lyne, Woodworth & Evarts, LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

This case arises out of a dispute between plaintiff Dr. Joseph D. Giampa, a chiropractor, and defendants Trustmark Insurance Company ("Trustmark") and Continental Assurance Company ("CNA") regarding Giampa's eligibility to receive disability payments. Defendants have moved for summary judgment on the ground that Giampa is not totally disabled as defined by their policies. After hearing and for the reasons set forth below, the motion is *DENIED.*

### FACTUAL BACKGROUND

When all inferences are drawn in favor of the nonmoving party, the facts are as follows:

On July 5, 1994, Giampa injured his back while treating a patient. Prior to and up until his injury, he had spent eighty-five to ninety-five percent of his time treating patients (i.e., conducting examinations and performing manipulations or adjustments) and the remainder of his time managing his two chiropractic facilities. After his injury, he was unable to treat patients and therefore expanded his management duties. Beginning in 1995, Giampa and his partners established a number of chiropractic clinics in Massachusetts and Florida. Working primarily from Massachusetts, Giampa monitors the clinics' activities and advises the chiropractors he hires to operate them. He currently has an interest in more than sixteen such facilities. Giampa's administrative duties have proven to be significantly more lucrative than his previous work as a treating chiropractor: his income increased from just over $200,000 in 1993 to over $1,000,000 in 1997.

Giampa claims that he is eligible to receive total disability benefits under the terms of two occupational disability policies he purchased from defendant CNA in 1992. Both policies define "total disability" as follows:

"Total Disability" means that because of Injury or Sickness:

(1) [The insured] cannot perform the substantial and material duties of [his] regular occupation . . .; and

(2) [The insured is] receiving care by a Physician which is appropriate for the condition causing [his] Disability.

App.Supp. Defs.' Mot.Summ.J. at A. 12, A. 20.[1] Both policies also contain residual, or partial, disability provisions, although each

---

[1]. In the event of total disability, the disability income policy provides monthly benefits of $7300, and the business overhead expense policy provides reimbursement of qualifying expenses up to $20,000 per month for a maximum of two years. (App.Supp. Defs.' Mot. Summ.J. at A.26–27.)

policy defines "residual disability" slightly differently:

> "Residual Disability," [under the disability income policy] means that although [the insured is] gainfully employed at [his] regular occupation, [his] Loss of Earnings Ratio is 20% or more because of Injury or Sickness and [he is] receiving care by a Physician which is appropriate for the condition causing [his] Disability.

> \*   \*   \*   \*   \*   \*

> "Residual Disability" [under the business overhead expense policy] means that because of Injury or Sickness

> 1. [The insured is] receiving care by a Physician which is appropriate for the condition causing [his] Disability; and

> 2. [The insured is] either:

> > a. unable to perform one or more of the substantial and material duties of [his] regular occupation; or

> > b. unable to spend as much time working at [his] regular occupation as [he] did before [his] Disability began.

*Id.* at A.13, A.20. On his applications for the policies, Giampa listed his "Occupation" as "chiropractor" and described his "Exact Duties" as "practicing chiropractor." *Id.* at A.1, A.6.

Soon after his injury, Giampa submitted a claim for benefits under the policies. CNA began making total disability payments to Giampa in December 1994. The payments continued until September 1995, when defendant Trustmark, which had undertaken the administration of Giampa's policies for CNA, determined that Giampa was not eligible for total disability benefits. Trustmark denied Giampa's subsequent claim for benefits in January 1996 and assumed Giampa's policies effective April 1, 1996.

This lawsuit followed. In May 1996, Giampa filed a complaint against Trustmark in Norfolk Superior Court; in August 1997, he filed an amended complaint adding CNA as a defendant and alleging breach of contract and violations of Mass. Gen.L. ch. 93A, § 9, and Mass.Gen.L. ch. 176D, § 3 (unfair claim settlement practices). The defendants removed the case here pursuant to 28 U.S.C. § 1441. They now move for summary judgment on the ground that Giampa is not totally disabled within the meaning of his policies.[2] This Court's subject matter jurisdiction is predicated on diversity of citizenship. The parties agree that Massachusetts law applies.

### DISCUSSION

#### A. Summary Judgment Standard

A motion for summary judgment must be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.' " *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving

---

**2.** Defendants also contend that they are entitled to summary judgment on the Mass. Gen.L. ch. 93A and ch. 176D claims on the ground that Giampa cannot establish that the defendants acted in bad faith in handling his claims under the policies. Because the unfair claim settlement practices claims were severed in the state court, I do not address this ground for defendants' motion.

party for a [reasonable] jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.' " *Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted). The court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour,* 63 F.3d at 36.

B. *"Regular Occupation"*

■ This case turns on the meaning of the term "regular occupation" under Giampa's two policies. Unfortunately, the policies themselves do not define the term, and Massachusetts caselaw provides little guidance. Generally speaking, "regular occupation" in an occupational disability policy refers to the claimant's occupation at the time his disability occurs. *See, e.g., Hopkins v. North Am. Co. for Life & Health Ins.,* 594 S.W.2d 310, 315 (Mo.Ct. App.1980) (citing 1A Appleman *Insurance Law & Practice,* § 671, at 600). "When faced with a claimant who had been engaged in diverse activities," the threshold issue is "whether that claimant was engaged in a single occupation that required the performance of many duties, or whether the claimant was actually engaged in more than one occupation." *Brumer v. National Life,* 874 F.Supp. 60, 63 (E.D.N.Y.1995), *aff'd on similar grounds,* 133 F.3d 906 (2d Cir.1998).

Characterizing Giampa as an "entrepreneurial chiropractor," (Mem.Supp. Defs.' Mot.Summ.J. at 9), the defendants argue that this Court should view his occupation at the time of his back injury broadly, to include both management and treatment duties. Although Giampa may be "totally disabled" from performing his duties as a treating physician, they urge, he has at most only a "residual disability" under the terms of the policies because he can (and indeed does) still perform his management tasks. Giampa contends that his "regular occupation" is that of a practicing chiropractor, the sole substantial and material duty of which is the ability to manipulate or adjust patients, and that he is presently employed in a new role, that of a "businessman," (Pl.'s Mem. Opp'n Defs.' Mot. Summ.J. at 6). He considers his pre-injury administrative duties to have been minor and incidental to his treatment function.

The approach of most courts in similar cases is to examine the nature of the substantial and material duties that the claimant actually performed before his injury and to inquire whether after injury he can continue to perform them " 'in the usual and customary way.' " *Blasbalg v. Massachusetts Cas. Ins. Co.,* 962 F.Supp. 362, 368 (E.D.N.Y.1997) (quoting *Niccoli v. Monarch Life Ins. Co.,* 70 Misc.2d 147, 332 N.Y.S.2d 803, 807 (N.Y.Sup.Ct.1972), *aff'd,* 45 A.D.2d 737, 356 N.Y.S.2d 677 (N.Y.App. Div.1974)); *see also, e.g.,* 15 George J. Couch et al., *Cyclopedia of Insurance Law* § 53:67, at 108–10 (2d ed. 1983) ("[I]t is sufficient [for total disability] that the insured cannot perform all the substantial and material acts necessary to the prosecution of his business or occupation in a customary and usual manner." (citing numerous cases)). Thus, a computer programmer who spent seventy-five percent of his pre-injury work day "in front of a computer screen" writing and maintaining programs and the remainder of his time bar coding was found eligible for total disability benefits when diagnosed with an ocular condition that limited his ability to scroll and scan on the screen but that did not prevent him from earning a living as a bar coder. *Blasbalg,* 962 F.Supp. at 364, 367–69 (interpreting a similar total disability provision); *see also Scalia v. Travelers Ins. Co.,* 210 So.2d 373, 374–75 (La.Ct.App. 1968) (holding that the owner and operator of a motor vehicle service station was totally disabled under his occupational disability policy after a back injury left him unable to engage in any of the physical aspects of the job, even though he could

still perform administrative, recordkeeping tasks).

A claimant is unable to perform the substantial and material duties of his regular occupation in the customary manner, and is therefore entitled to total disability coverage, "whenever there is a substantial change in the responsibilities, terms or conditions of [his] occupation." *McFarland v. General Am. Life Ins. Co.*, 149 F.3d 583, 588 (7th Cir.1998) (construing an identical total disability provision). The Seventh Circuit has recognized that a "qualitative performance reduction" can give rise to "total disability" within the meaning of policies like Giampa's. *Id.* A qualitative reduction has occurred if the claimant is "no longer able to perform an essential duty of his regular occupation, resulting in the loss of his position" or precluding him from continuing in his pre-injury employment. *Id.* at 587–88 (noting that "[t]his would be the case even if, in percentage terms, the disability affected an essential duty that comprised ... only 5% of the person's overall duties"). For example, a shortstop who could no longer perform "one core and essential aspect of his job (throwing) as a result of an injury" would be totally disabled, because his disability, "while affecting only one of several core skills, would be enough to prevent him from continuing to perform as a shortstop," even though he might still work as a baseball player in some other position. *Id.* at 588 (noting that "a person purchasing disability insurance with the definition of totally disabled at issue here would reasonably expect that, if he was no longer able to perform an essential duty of his regular occupation, resulting in the loss of his position, he would be 'totally disabled' ").

█ Even if a claimant retains the ability "to some extent to perform some of [his] customary duties," he may still recover total disability benefits "if such duties do not constitute a substantial part of the duties normally required of the job." 15 Couch, § 53:70, at 115. " 'The fact that the insured is able to perform some inconsequential, trivial, or incidental duties connected with his usual employment or occupation does not preclude recovery under [a total disability provision in an occupational disability policy], regardless of [the provision's] particular phrasing.' " *Solberg v. Aetna Life Ins. Co.*, 151 Conn. 637, 201 A.2d 465, 466 (1964) (quoting 29A Am.Jur. *Insurance* §§ 1517–1518) (holding that an insured who spent the majority of his pre-injury time operating a jig-boring machine and five to ten percent of his time on billing matters was totally disabled under the terms of his occupational disability policy when he could no longer operate the machine but could still review bills); *see also, e.g., McGrail v. Equitable Life Assurance Soc'y of the United States*, 292 N.Y. 419, 55 N.E.2d 483, 486–87 (1944) (affirming a verdict awarding total disability benefits to a physician who spent ninety percent of his pre-injury time performing surgery and who could only prepare patient reports after his accident); *Niccoli*, 332 N.Y.S.2d at 807–08 (summarizing cases).

On the whole, the focus of the caselaw is on how the claimant earned his "primary living" before his injury, *DiTommaso v. Union Cent. Life Ins. Co.*, No. 89–6323, 1991 WL 249977, at *1 (E.D.Pa. Nov. 25, 1991), *aff'd*, 972 F.2d 1330 (3d Cir.1992), not on tasks peripheral to his daily work, even if "pursue[d] for gain," *Hopkins*, 594 S.W.2d at 315–16 (adopting a dictionary definition of "occupation" as " 'the principal business of one's life' " and holding that a jury could find truck-driving to be the regular occupation of a claimant who also daily supervised his son's business before his disability ended his twenty-three-year driving career (quoting *Webster's Third New International Dictionary* )).

Under any of these formulations, a jury could reasonably find that Giampa's regular occupation at the time of his injury was that of a treating chiropractor and/or that his pre-injury management duties were purely incidental to his core function of

manipulating patients, and that he is therefore totally disabled within the meaning of his policies. *Cf. Morris v. Paul Revere Ins. Group*, 986 F.Supp. 872, 883–84 (D.N.J.1997) (denying summary judgment where the claimant, a chiropractor who spent the majority of his time treating patients and the remainder managing two clinics, and the insurer "presented sufficient evidence to create a material issue of fact" whether the claimant's "important duties" under the terms of total disability clauses in ERISA-governed occupational disability policies were administrative or chiropractic); *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F.Supp. 872, 882–83 (D.Del. 1994) ("Because there is an abundance of genuine issues of material fact relating to plaintiff's regular occupation under [the] disability insurance policy, this issue cannot be disposed of at summary judgment.").

Defendants argue that Giampa's management of chiropractic facilities does not constitute a new or different occupation from that of chiropractor because Giampa is still licensed, has maintained malpractice coverage, and earns more now than he did before his injury. However, most courts have rejected similar arguments when faced with a physician claimant who is unable to practice in his speciality and turns to work in a related field within the medical profession. *See, e.g., Dixon v. Pacific Mut. Life Ins. Co.*, 268 F.2d 812, 815–16 (2d Cir.1959) (holding that a surgeon was totally disabled despite his residual capacity to practice general medicine at a veterans' hospital); *Carlyon v. Mutual of Omaha Ins. Co.*, 220 Mich.App. 444, 559 N.W.2d 407, 408 (1996) (concluding that an emergency room physician who worked as a prison doctor following his injury was totally disabled under a nearly identical total disability provision); *Niccoli*, 332 N.Y.S.2d at 808–09 (upholding a jury's finding that a physician who was unable to continue his obstetrics and gynecology

practice was totally disabled even though he found employment as a hospital's director of family planning and sex education); *see also Brumer*, 874 F.Supp. at 64 (understanding applicable caselaw to "indicate that management of a health-care facility, even where that position requires performance of tasks only a physician may perform, including some of the same chores as the physician's prior responsibilities, may well constitute an occupation separate and apart from that of a practitioner of medicine").

■ Because occupational disability policies are "designed to indemnify against loss of capacity to work, not against loss of income," the fact that a claimant derives a "larger income from a new occupation will not bar recovery under his disability policy." *Niccoli*, 332 N.Y.S.2d at 805 (citing cases). In the context of a policy intended to protect the insured's investment in a particular set of skills, it would make little sense to penalize him for utilizing, successfully, some of those skills in pursuit of a new career. *See, e.g., Dixon*, 268 F.2d at 815 ("[C]old logic can be most unrealistic. Carried to extremes, it could be asserted that so long as [the claimant] retained his license to practice he was not totally disabled."); *Blasbalg*, 962 F.Supp. at 369; *Niccoli*, 332 N.Y.S.2d at 808–09 ("This court will not give a strained interpretation to the contract ... because [the claimant] has used some of his acquired knowledge and medical training in his new occupation.").

If Giampa's policies contained only total disability provisions, this would be the end of the matter. However, defendants argue that, when the total disability provisions are read in conjunction with the policies' residual or partial disability clauses, Giampa is at most covered by the partial disability benefits provisions.[3]

■ Insurance policies containing provisions for total and partial disability

**3.** The parties concur that Giampa is not eligible for partial disability benefits under the policies because he does not meet the loss-of-income requirement.

must be construed as a whole, so as to give effect to the entire contract. *See, e.g., DiTommaso,* 1991 WL 249977, at *2 (rejecting an interpretation of a total disability clause that would render the accompanying residual disability clause meaningless); *Heald v. Aetna Life Ins. Co.,* 340 Mo. 1143, 104 S.W.2d 379, 383 (1937); 15 Couch, § 53:74, at 119 (citing *Heald* and other cases). *If* in fact a jury found that Giampa's management duties constituted a *substantial and material part* of his pre-injury work, then the business overhead expense policy's partial disability clause would seem on its face to preclude recovery of total disability benefits under that contract because Giampa would still be able to perform "one . . . of the substantial and material duties of [his] regular occupation." Defendants assert that any other reading of the provisions would have the effect of wiping the partial disability clause out of the contract.

Few courts have discussed the interplay between the two types of disability provisions, even when interpreting total disability language against the background of a partial disability clause. *See, e.g., Brumer,* 874 F.Supp. at 61 (referring to the existence of a partial disability provision, identical to Giampa's, only in passing). The courts that have addressed the issue, however, have eschewed a literal reading of either clause and have attempted to reconcile them so that neither overrides the other:

> [D]isability might prevent the insured from performing substantially an occupation, or [might] be practical inability to do all those substantial and material acts and duties characterizing and pertaining to the occupation in its entirety, without amounting to an inability to do "one or more important daily duties pertaining to the occupation".

*Heald,* 104 S.W.2d at 383 (upholding a finding that a meat market employee who could no longer cut meat but could still manage the meat counter and supervise other workers was totally disabled under a policy with total and partial disability provisions). This is so because a "literal interpretation of the total disability clause would defeat the very purpose of insurance against total disability, because it rarely happens that an insured is so completely disabled that he can transact no business duty whatever." *Fitzgerald v. Globe Indemnity Co.,* 84 Cal.App. 689, 258 P. 458, 461 (1927); *see also, e.g., McGrail,* 55 N.E.2d at 487 (holding that an insured may be totally disabled even when he may perform "occasional acts relating to his vocation, but not constituting a substantial part of any 'daily duty'" (citing *Fitzgerald,* 84 Cal.App. 689, 258 P. 458)).

Admittedly, the partial disability clause at issue here is worded somewhat differently from the ones in the above cases, and reading the total disability clause too broadly risks nullifying the partial disability counterpart. However, the general principle driving the caselaw is clear: when interpreting the provisions of an occupational disability policy, the intent of the parties is paramount. *See, e.g., Neilson v. Mutual Life Ins. Co.,* No. CIV. A.96–554–SLR, 1998 WL 422301, at *8 (D.Del. July 6, 1998) (emphasizing that total disability provisions "'should be and generally are liberally and fairly construed so as to give the insured the indemnity supposedly contracted for, to the exclusion of any narrow or technical interpretation that would defeat the intention of the parties'" (quoting *Aetna Life Ins. Co. v. Moyer,* 113 F.2d 974 (3d Cir.1940))); *Primavera v. Rose & Kiernan, Inc.,* 248 A.D.2d 842, 670 N.Y.S.2d 223, 225 (N.Y.App.Div.1998) (interpreting the term "occupation" in the claimant's policy in conjunction with the description of his job and duties that he provided on the policy application); *cf. Carlyon,* 559 N.W.2d at 408 (reiterating the longstanding policy that, to the extent that two provisions in an insurance contract are truly in conflict, they must be "construed most favorably to the insured to maximize coverage").

In light of this rule that total disability policies should be liberally construed, I conclude that a person in Giampa's position, who is disabled from engaging in eighty-five to ninety-five percent of his previous substantial and material duties as a treating chiropractor, is entitled to coverage under the total disability provision even if his disability does not prevent him from performing an incidental job duty. This conclusion is consistent with protecting the insured's expectations and his investment in the set of skills—that of a practicing chiropractor—for which he sought insurance. On the other hand, if a jury were to conclude that management duties were a substantial and material part of Giampa's pre-injury work, rather than an incidental part, the partial disability provision would provide the applicable coverage. This interpretation would protect the contracting parties' intent that a partial disability only results in coverage when there is a certain income reduction.

### C. *Giampa's Alleged Return to Treating Patients*

Defendants also assert that even under Giampa's conception of "regular occupation," he is not entitled to total disability benefits because he has actually returned to treating patients on at least a part-time basis. Giampa concedes that he would not be eligible for total disability payments if this were true. However, the record reveals a significant factual dispute regarding whether and to what extent Giampa has continued to manipulate patients since his injury. As a result, summary judgment is inappropriate on this ground. *See, e.g., Lipsett v. University of P.R.*, 864 F.2d 881, 895 (1st Cir.1988) ("If, after [reviewing the record in the light most favorable to the nonmoving party], . . . some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the [summary judgment] motion." (citing *Anderson,*

477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202)).

### *ORDER*

Because I conclude that a genuine issue of material fact exists as to Giampa's regular occupation before his injury, the defendants' motion for summary judgment (Docket No.64) is *DENIED.*