## Suffolk Construction Company, Inc., & another[1] *vs.* Illinois Union Insurance Company & another.[2]

No. 10-P-1336.

Suffolk. April 5, 2011. - August 15, 2011.

Present: Grasso, Kafker, & Sikora, JJ.

*Insurance,* Construction of policy, Insured. *Words,* "Executed."

Discussion of the standard of review applicable when reviewing a grant of summary judgment in a civil action involving the interpretation of an insurance contract. [93-94]

In a civil action brought by the plaintiffs, the general contractor and subcontractor on a construction project, alleging breach of contract and seeking a judgment declaring that the commercial general liability insurer of a lower-tier subcontractor owed them defense and indemnity against claims brought by an injured employee of the lower-tier subcontractor, the trial court judge correctly entered summary judgment against the plaintiffs, where the recitation on the additional insured endorsement page (which identified the additional insureds with the phrase "as required by contract, provided the contract is executed prior to loss") required the parties to sign a written contract to create additional insureds, which they failed to accomplish. [94-97]

Civil action commenced in the Superior Court Department on July 1, 2008.

The case was heard by *Nancy S. Holtz,* J., on motions for summary judgment.

*Brian A. O'Connell* for the plaintiffs.

*Kurt M. Mullen (Gregory P. Deschenes* with him) for the defendants.

Sikora, J. This appeal presents an issue of insurance contract interpretation. The issue arises from the language of a policy addendum commonly known as an additional insured endorse-

[1] S&F Concrete Incorporated.
[2] Westchester Fire Insurance.

ment. The setting for the use of the endorsement is the construction industry.

*Background.* In 2004, Suffolk Construction Company, Inc. (Suffolk), served as general contractor for the Liberty Place construction project in Boston (project). Suffolk subcontracted the concrete work to S&F Concrete Incorporated (S&F). The subcontract between Suffolk and S&F obligated S&F to require its lower-tier subcontractors to maintain commercial general liability insurance and to name Suffolk as an additional insured on all liability policies.

S&F subcontracted with Hallamore Corporation (Hallamore) for the rental and operation of two cranes at the project site. Illinois Union Insurance Company (Illinois Union) provided commercial general liability coverage to Hallamore.[3] Although the written purchase order between S&F and Hallamore made no reference to the addition of insureds, the president of Hallamore considered it a contractual duty to include Suffolk and S&F as additional insureds under the Hallamore policy with Illinois Union.

On October 13, 2004, Hallamore's insurance agent, the ABC Insurance Group (ABC), forwarded to S&F a certificate of insurance describing Suffolk and S&F as "additional insured[s]" under Hallamore's coverage by Illinois Union. However, the certificate stated, "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE [pertinent general liability policy]."[4]

---

[3] Westchester Fire Insurance (Westchester) provided coverage in excess of the Illinois Union policy limits. In Superior Court, Suffolk and S&F sued Westchester as a codefendant. They no longer press any claim against Westchester because the underlying personal injury action settled for an amount within the primary coverage limits of the Illinois Union policy. Their pursuit of defense and indemnification now aims solely at Illinois Union.

[4] The transmittal of the certificate followed electronic mail and facsimile communication between S&F and ABC about the language of the certificate. No authorized representative of ABC signed the certificate. A certificate of this language does not accomplish the addition of insureds to the coverage of the policy holder. See *Commonwealth* v. *Gall*, 58 Mass. App. Ct. 278, 289-290 (2003), and authorities cited.

The policy contract between Hallamore and Illinois Union did not identify Suffolk and S&F as additional insureds. The additional insured endorsement page set out a schedule space for identification of added insureds beneath the subheading "Name of Person or Organization." Beneath this subheading the schedule recited, "AS REQUIRED BY CONTRACT, PROVIDED THE CONTRACT IS EXECUTED PRIOR TO LOSS." At all times relevant, the schedule space below this recital remained empty.[5] Illinois Union did not receive any request to add Suffolk or S&F for coverage during Hallamore's work at the project.[6]

On October 18, 2004, Edward McLaughlin, an oiler for Hallamore's cranes, fell off a wooden "gang ladder" as he climbed out of the excavation footprint of the project site. McLaughlin sustained serious injuries and sued Suffolk and S&F for negligent maintenance of an unsafe work area. Upon their assumption of coverage as additional insureds, Suffolk and S&F called upon Illinois Union to defend and indemnify them under the terms of the policy between Hallamore and Illinois Union. Illinois Union called for the "contract" requiring Hallamore to name Suffolk and S&F as additional insureds. In response, Suffolk and S&F provided copies of (1) the purchase order between S&F and Hallamore; (2) correspondence including S&F's request that Hallamore add Suffolk and S&F as additional insureds; and (3) the certificate of insurance created by ABC. Suffolk and S&F do not contend that these documents constitute a written agreement by Hallamore to make them

[5]Below the schedule space for identification of additional insureds, a statement read, "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of 'your work' for that insured . . . ."

[6]Coverage of additional insureds (putatively Suffolk and S&F) is limited to liability arising out of the work of the named insured (Hallamore). The endorsement extends coverage "only with respect to liability arising out of 'your [the named insured's] work' for that [added] insured . . . ." See note 5, *supra*. Illinois Union does not argue that the addition of Suffolk and S&F would alter its premium charges. Often, no greater premium is required for an added insured because "coverage for an additional insured is typically limited to liability arising out of the named insured's work or operations." 3 Couch, Insurance § 40:25 (3d ed. 2007) (noting that insurer is *not* providing coverage for additional insured's own work). Illinois Union concedes that the personal injury involved here did arise out of Hallamore's work.

added insureds, but argue that they are evidence of an oral agreement to do so. Illinois Union refused to defend or indemnify Suffolk and S&F. Ultimately, McLaughlin settled his claim against Suffolk and S&F for $210,000.

Subsequently Suffolk and S&F brought this suit in Superior Court for breach of contract and a declaration that Illinois Union had owed them defense and indemnity against McLaughlin's claims. After discovery, the parties cross-moved for summary judgment. The judge granted Illinois Union's motion and entered a judgment dismissing the complaint. She reasoned that the parties had not accomplished an "executed" contract as required by the endorsement; that an alleged oral agreement did not satisfy the requirement; and that ABC had possessed no authority to bind Illinois Union. For the following reasons, we conclude the judge correctly ordered summary judgment against Suffolk and S&F.

*Analysis.* Under Hallamore's policy with Illinois Union, the additional insured endorsement covers other parties "as required by contract, provided the contract is executed prior to loss." Suffolk and S&F argue that the term "executed" permits an oral executory agreement to create the predicate contract for added coverage. Illinois Union insists that the term "executed" unambiguously contemplates a written, signed agreement. The disputed language has generated cases in other jurisdictions. See part 3, *infra.* No Massachusetts precedents have encountered it.

1. *Standard of review.* Familiar guidelines apply. In review of a grant of summary judgment, we proceed de novo upon the same record as did the motion judge. See, e.g., *Miller* v. *Cotter,* 448 Mass. 671, 676 (2007); *Eastern Holding Corp.* v. *Congress Financial Corp. (New England),* 74 Mass. App. Ct. 737, 740 (2009). We must determine whether all material facts and questions of law are resolved. *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). When the allowance of summary judgment results from cross motions, we examine the record in the light most favorable to the losing party. See *DiLiddo* v. *Oxford St. Realty, Inc.,* 450 Mass. 66, 70 (2007); *Marhefka* v. *Zoning Bd. of Appeals of Sutton,* 79 Mass. App. Ct. 515, 516 (2011).

"The interpretation of an insurance contract is no different

from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense." *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 280 (1997). The initial determination whether the disputed term in the contractual language contains an ambiguity presents a question of law. *Bank* v. *Thermo Elemental Inc.*, 451 Mass. 638, 648 (2008). *Quinn* v. *Mar-Lees Seafood, LLC*, 69 Mass. App. Ct. 688, 695 (2007). A term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning. *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998), and cases cited. The mere existence of a disputed interpretation by the parties does not create an ambiguity. *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999). *Quinn* v. *Mar-Lees Seafood, LLC, supra.* "Nor does the mere existence of multiple dictionary definitions of a word, without more, suffice to create an ambiguity, for most words have multiple definitions." *Citation Ins. Co.* v. *Gomez, supra.* If the language is free of ambiguity, our responsibility is to apply its clear terms. *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982).

2. *Literal analysis; the word "executed."* We first scrutinize the alleged ambiguity "by itself." *Bank* v. *Thermo Elemental Inc., supra.* The critical word is "executed." In the absence of case law, established dictionaries can furnish the approved natural meaning of disputed terms. See, e.g., *BloomSouth Flooring Corp.* v. *Boys' & Girls' Club of Taunton Inc.*, 440 Mass. 618, 622-623 (2003) (citing standard and legal dictionaries to define "due" in a contract); *Andrade* v. *Aetna Life & Cas. Co.*, 35 Mass. App. Ct. 175, 178 (1993) (using Black's Law Dictionary to define "relative" in standard commercial automobile insurance policy); *Siebe, Inc.* v. *Louis M. Gerson Co.*, 74 Mass. App. Ct. 544, 551 (2009) (using Black's Law Dictionary to define contractual terms "claim," "assertion," and "defend").

Black's Law Dictionary provides two definitions of an "executed contract": (1) "[a] contract that has been fully performed by both parties"; and (2) "[a] signed contract." Black's Law Dictionary 369 (9th ed. 2009). Similarly, it furnishes two definitions for the bare word "executed": in modification of a document, "executed" means "signed"; in modification of conduct,

it means "done, given, or performed." *Id.* at 650. Finally, among five definitions offered for the root word "execute," Black's includes two pertinent to our circumstances: (1) "[t]o perform or complete (a contract or duty)"; and (2) "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." *Id.* at 649.

In our circumstances, these meanings reduce to the alternatives that the contract requiring additional insured status for Suffolk and S&F must have been signed before the accident inflicting the loss, or that the contract must have been fully performed before the accident. The second alternative cannot logically apply here. It would require the completion of the work covered by the contract before the injury of the worker engaged in the performance of that work. Here the word "executed" would fittingly mean a contract "signed." Dictionaries of general use lead us to the same conclusion. See, e.g., American Heritage Dictionary of the English Language 621 (4th ed. 2006) (defining "execute" as "[t]o make valid, as by signing: [as to] execute a deed"); Webster's Third New International Dictionary 794 (1993) (in reference to legal instruments, to "perform what is required to give validity to [as by signing and perhaps sealing and delivering]").[7,8]

The expansion of analysis from the word "executed" to the entire phrase in which it appears reinforces our view. The interpretation proposed by Suffolk and S&F would make simple formation of a contract sufficient for the addition of insureds. If the endorsement accepted mere formation, its language could end with the words "as required by contract." The further clause, "provided the contract is executed prior to loss," imposes a requirement beyond mere formation. "[N]o part of [a] contract

---

[7]Statutory and decisional language suggest similarly that the verb "execute" typically means the completion of a document. See, e.g., G. L. c. 149, § 27B (public works contractors' verification of wage payments); G. L. c. 149, § 44A(3) (successful public works bidder's duty to complete a conforming contract); G. L. c. 149, § 44E½ (same); *Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 718-723 (1999) (using "executed" seven times to mean "signed").

[8]The context of the endorsement page tends to support our interpretation of the language. The page leaves room for insertion of the names of the additional insureds in writing. That arrangement increases the probable form of the enabling contract as written also.

is to be disregarded." *McMann* v. *McGowan*, 71 Mass. App. Ct. 513, 516 n.2 (2008), quoting from *Boston Elev. Ry.* v. *Metropolitan Transit Authy.*, 323 Mass. 562, 569 (1949).

3. *Authority.* Decisions from other jurisdictions have construed similar endorsement language to require a prior written contract between the primary insured and the added insureds. See *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, 634 F.3d 112, 119-121 (2d Cir. 2010) (applying New York law and interpreting "executed" to require pre-loss signing or full performance of an underlying contract, and denying additional insured status to the plaintiffs in the absence of both); *Westchester Surplus Lines Ins. Co.* v. *Stonitsch Constr. Inc.*, 572 F. Supp. 2d 946, 950 (N.D. Ill. 2008) (applying Illinois law and the same reasoning to deny additional insured status); *Rodless Properties, L.P.* v. *Westchester Fire Ins. Co.*, 40 A.D.3d 253, 254 (N.Y. 2007) (applying New York law; same reasoning and result). Contrast *Evanston Ins. Co.* v. *Westchester Surplus Lines Ins. Co.*, 546 F. Supp. 2d 1134, 1143-1144 (W.D. Wash. 2008), in which the court applied Washington law and a resulting alternative definition of an "executed" contract (as simply the product of "offer, acceptance, and bargained for consideration") to determine the absence of the requisite underlying contract and the ineligibility of the construction site owner and a contractor as additional insureds.[9]

Treatises upon construction and insurance law observe similarly that additional insured provisions usually require a writing. See, e.g., Bruner & O'Connor on Construction Law § 11:152 (2010) ("A common requirement of [additional insured] endorsements is that the commitment to procure such coverage be in writing"); 3 Couch, Insurance § 40:29 (3d ed. 2007) (courts generally hold that "there must be sufficient evidence in writing requiring the inclusion of the person or entity as an additional insured under the policy").

---

[9]We have found only two deviations from the dominant reasoning. One is the rationale derived from Washington law employed in *Evanston Ins. Co.* v. *Westchester Surplus Lines Ins. Co.*, *supra.* The other occurred in *10 Ellicott Square Ct. Corp.* v. *Mountain Valley Indem. Co.*, in which the United States District Court had deemed an oral agreement to be a satisfactory "executed" contract, but in which the United States Court of Appeals overruled that view. 634 F.3d at 114, 121.

4. *Utility.* Finally, the requirement of a prior written agreement serves important practical purposes. A written and dated instrument furnishes certainty. Its definiteness should act as safeguard against mistaken and fraudulent claims, and against the loss of time, effort, and expense consumed by litigation to resolve them.

*Conclusion.* The phrase "as required by contract, provided the contract is executed prior to loss" means that the contracting parties must have signed a written contract to create additional insureds. Because Hallamore and S&F did not accomplish a signed, written agreement requiring Hallamore to include Suffolk and S&F as additional insureds, Illinois Union did not owe Suffolk or S&F defense or indemnity against the claims of the injured worker. However, we note that rather than include a declaration to this effect, the judgment simply dismissed the plaintiffs' complaint. We therefore vacate the judgment and remand for entry of a new judgment containing appropriate declarations as to the two counts of the complaint seeking declaratory relief.[10] See *Mscisz* v. *Kashner Davidson Sec. Corp.*, 446 Mass. 1008, 1010 (2006), citing *Cherkes* v. *Westport*, 393 Mass. 9, 12 (1984) ("[I]n a properly brought action for declaratory relief there must be a declaration of the rights of the parties even though relief is denied to the plaintiffs").

*So ordered.*

---

[10]The plaintiffs brought the second such count against Westchester Fire Insurance. See note 3, *supra.*