CLIFFORD E. McLAUGHLIN *vs.* BERKSHIRE LIFE INSURANCE
COMPANY OF AMERICA.

No. 11-P-929.

Worcester. June 4, 2012. - August 23, 2012.

Present: KATZMANN, BROWN, & SULLIVAN, JJ.

*Insurance,* Disability insurance, Construction of policy. *Contract,* Insurance.
  *Words,* "Occupation."

In a civil action brought in Superior Court concerning coverage under an oc-
  cupational disability insurance policy during a fourteen-month period for
  which the plaintiff claimed total disability from his chiropractic practice
  while continuing to work part time as a nurse, the judge erred in granting
  summary judgment in favor of the defendant insurer on all claims, where
  the ambiguous policy provision at issue, construed in favor of the insured,
  indicated that the plaintiff had contracted for coverage of the specific oc-
  cupation of chiropractor, and the fact that he was able to work as a nurse
  for the period in question did not preclude him from collecting total dis-
  ability benefits. [354-358]

CIVIL ACTION commenced in the Superior Court Department on
February 6, 2008.

The case was heard by *Bruce R. Henry,* J., on motions for
summary judgment.

*Roy A. Bourgeois* for the plaintiff.

*Edward J. McDonough, Jr.* (*Theodore F. Glockner* with him)
for the defendant.

KATZMANN, J. This case raises a question about coverage under
a disability insurance policy during a fourteen-month period for
which the plaintiff claimed total disability from his chiropractic
practice while continuing to work part time as a nurse. The plain-
tiff appeals from a Superior Court summary judgment entered for
the defendant insurer on all claims. We conclude that the sum-
mary judgment for the defendant must be vacated (except for one
particular), that partial summary judgment must be granted for

the plaintiff, and that we must remand for further proceedings on certain claims.

*Background.* We summarize the summary judgment record in the light most favorable to the defendant. The plaintiff, Clifford McLaughlin, began working as a chiropractor in 1985. In 1987, he purchased a total disability insurance policy (policy) from the defendant, Berkshire Life Insurance Company of America (Berkshire), that provided for $3,000 per month in disability benefits. In the section marked "[o]ccupation" in the application for insurance coverage, McLaughlin identified his job title as "sole practitioner" and his "[e]xact [d]uties" as "chiropractor." In 1993, McLaughlin applied to change his policy's elimination period and again specified that his occupation was chiropractor. McLaughlin continued to work as a chiropractor until 2007, when he filed for disability benefits under the policy.

In 2003, McLaughlin sold the building that housed his chiropractic practice, relocated to a smaller space, and scaled back his practice. From 2002 to 2007, McLaughlin's income from his chiropractic practice generally declined.

In 2003, McLaughlin also started studying to become a nurse, obtaining a certificate as a nursing aide and then his degree as a licensed practical nurse (LPN). In 2005, McLaughlin started working as a nurse in addition to continuing his chiropractic practice part time. He continued to pay premiums under the policy without change to his stated occupational classification as a "chiropractor."

McLaughlin's chiropractic practice relied heavily on the use of his thumbs. He estimated that he first began experiencing pain in his left thumb around 2002.[1] According to McLaughlin, it was worsening thumb pain that caused him to scale back his chiropractic practice and begin his nursing studies as a "back-up plan."[2]

By March, 2007, the condition of McLaughlin's left thumb deteriorated. At around that time, he also began to feel pro-

---

[1]Berkshire disputes McLaughlin's recollection that his thumb pain began in 2002, citing the lack of medical evidence for this onset date.

[2]Berkshire argues that McLaughlin's "career change was unrelated to any disability," citing statements that the plaintiff made in his application to nursing school as proof that he really wanted to pursue a career in nursing.

nounced pain in his right thumb. In April, 2007, McLaughlin sought the care of his primary care physician for the first time with reference to his thumb pain. That same month, he saw a hand surgeon who diagnosed him with basal joint arthritis.

McLaughlin informed Berkshire of his condition in May, 2007, and Berkshire sent him the necessary claim forms. McLaughlin continued his chiropractic work until June 27, 2007, when he hurt his right thumb while performing an adjustment of the spine and could no longer do his chiropractic work. McLaughlin submitted his claim forms to Berkshire the next day.

After Berkshire failed to affirm or deny his claim, McLaughlin filed suit against Berkshire on February 6, 2008, seeking in count I a judgment declaring that he was entitled to benefits under the policy. The complaint also alleged breach of contract (count II); breach of the implied covenant of good faith and fair dealing (count III); and violations of G. L. c. 176D, § 3(9), and G. L. c. 93A (counts IV and V).

After ceasing his chiropractic practice, McLaughlin continued to work part time[3] as a nurse until August 16, 2008. McLaughlin had thumb surgery on August 27, 2008. He did not return to his chiropractic practice or to work as a nurse after the surgery. On October 21, 2008, a representative of Berkshire wrote to McLaughlin's attorney that he "currently appears to be totally disabled from his occupation as a chiropractor and LPN." After the 180-day elimination period, Berkshire began making disability payments to McLaughlin in March, 2009.

In January, 2010, the parties filed cross motions for summary judgment. A Superior Court judge denied McLaughlin's motion for partial summary judgment (which pertained only to counts I and II) and allowed Berkshire's cross motion for summary judgment on all counts. The judge determined that "[w]hile he was disabled from performing his chiropractic duties during th[e] time period from June 28, 2007, to August 27, 2008, McLaughlin was not unable to perform the 'material and substantial duties' of his occupation as a nurse and, therefore, he was not

---

[3]The number of hours that McLaughlin worked as a nurse varied. His employer considered thirty-two hours per week full time. McLaughlin generally worked full time from September, 2005, until December, 2006. From the end of December, 2006, until August, 2008, McLaughlin worked part time.

totally disabled for purposes of his disability insurance policy."
McLaughlin appealed from the resulting summary judgment in
favor of Berkshire.

*Discussion.* "In review of a grant of summary judgment, we
proceed de novo upon the same record as did the motion
judge. . . . We must determine whether all material facts and
questions of law are resolved." *Suffolk Constr. Co.* v. *Illinois
Union Ins. Co.*, 80 Mass. App. Ct. 90, 93 (2011) (*Suffolk Constr.
Co.*).

In the first count of his complaint, McLaughlin seeks a judg-
ment declaring that he is entitled to benefits under the policy.
Because Berkshire recognized that McLaughlin was totally dis-
abled after his thumb surgery and began paying benefits after
the policy's 180-day elimination period,[4] the issue on appeal is
whether McLaughlin was entitled to benefits for the fourteen-
month period between when he filed the initial claim and when
he had thumb surgery — the period during which he worked
part time as a nurse after ceasing his chiropractic practice due
to disability.

The policy and the amended policy only provided coverage for
"total disability," with no coverage for partial or residual disability.
The relevant policy language specifies as follows:

> "[T]otal disability means your inability to perform the
> material and substantial duties of *your occupation*, except:
> the terms of this policy may provide that the indemnity
> can be paid for more than 120 months. In such a case, for
> benefits that are paid for disability after the first 120 months,
> or the policy anniversary that falls on or most nearly after
> your fifty-fifth birthday if later, the term 'total disability'
> will have this meaning: your inability to engage in any
> gainful occupation in which you might reasonably be
> expected to engage, with due regard for your education,
> training, experience, and prior economic status." (Emphasis
> supplied.)

This policy is a hybrid policy that combines an initial "occu-

---

[4]McLaughlin does not challenge the grant of summary judgment to Berkshire
on that part of count II (breach of contract) relating to Berkshire's failure to
waive the policy's elimination period. As such, this issue is not before us and
we shall affirm that part of the judgment.

pational disability" policy with subsequent coverage under a "general disability" policy after the initial term. See 10A Couch on Insurance 3d § 146:3 (2005). A general disability policy "defines disability in terms of the inability of the insured to engage in any gainful occupation," while an occupational disability policy only requires "that the insured be unable to perform the duties of his or her particular occupation" to qualify for benefits. *Ibid.* At all times relevant to our analysis, McLaughlin was covered, if at all, under the occupational disability portion of his policy.

McLaughlin argues that the phrase "your occupation" in the policy refers to the occupation he indicated in his application for insurance in 1987 and in his 1993 application for change form. Alternatively, McLaughlin argues that the phrase "your occupation" is ambiguous and should be construed in his favor. Berkshire contends that "your occupation" is unambiguous and that the insured's occupation is whatever work he was engaged in at the time the disability began, not the occupation listed in the application.

"The interpretation of language in an insurance contract 'is no different from the interpretation of any other contract, and we must construe the words of the policy in their usual and ordinary sense.' " *Metropolitan Property & Cas. Ins. Co.* v. *Morrison,* 460 Mass. 352, 362 (2011), quoting from *Boston Gas Co.* v. *Century Indem. Co.,* 454 Mass. 337, 355 (2009). "Language in an insurance policy must be given its ordinary meaning . . . and construed in the sense that the insured will reasonably understand to be the scope of his coverage." *Finn* v. *National Union Fire Ins. Co. of Pittsburgh, Penn.,* 452 Mass. 690, 695 (2008), quoting from *Slater* v. *United States Fid. & Guar. Co.,* 379 Mass. 801, 803 (1980). "The initial determination whether the disputed term in the contractual language contains an ambiguity presents a question of law. . . . A term is ambiguous only if it is susceptible of more than one meaning and if reasonably intelligent persons would differ over the proper meaning." *Suffolk Constr. Co.,* 80 Mass. App. Ct. at 94.

The term "occupation" by itself is not ambiguous. Therefore, we construe the word in its "usual and ordinary sense." *Metropolitan Property & Cas. Ins. Co.,* 460 Mass. at 362. "Occupation" means "the principal business of one's life." Merriam-

Webster's Collegiate Dictionary 858 (11th ed. 2005). See *Giampa* v. *Trustmark Ins. Co.*, 73 F. Supp. 2d 22, 26 (D. Mass. 1999) (*Giampa*). See also *Everson* v. *General Acc., Fire & Life Assur. Corp.*, 202 Mass. 169, 175 (1909) ("Occupation is a term of broad significance and includes the trade, calling, profession, office, employment or business by which one usually gets his living").

While the meaning of "occupation" is not ambiguous, the policy does not specify the point in time at which the insured's occupation should be determined. Contrast *Klein* v. *National Life of Vt.*, 7 F. Supp. 2d 223, 224 (E.D.N.Y. 1998) (three disability policies at issue specified that occupation is determined at time disability begins). As noted above, McLaughlin argues that his occupation is "chiropractor" as he indicated in the application for insurance in 1987 and the 1993 application for change form. These applications were attached to and incorporated explicitly into the policy.[5] See generally *Adamaitis* v. *Metropolitan Life Ins. Co.*, 295 Mass. 215, 216-217, 219 (1936) ("Clearly the policy, the supplementary contract and the plaintiff's application for insurance[, both of which were attached to and made part of the policy,] were to be construed together"). In contrast, Berkshire, citing Appleman, argues that "[t]he term 'occupation' refers to the occupation that the insured was carrying on at the time of injury." 31 Appleman on Insurance 2d § 187.06[A], at 232 (2007). Berkshire further argues that reading the policy to define McLaughlin's occupation at the time of application also effectively reads out of the policy the "non-cancellation" provision, which anticipates the prospect of change in the insured's occupation.[6]

---

[5]The policy provides, "This policy, the endorsements, and the attached papers, if any, make up the entire contract."

[6]The relevant policy language states:

*"Non-Cancellable and Guaranteed Renewable to Age 65*

"Until the policy anniversary that falls on or most nearly after your sixty-fifth birthday, there is only one condition for the renewal of this policy: the premiums must be paid as is required in this policy. Before such anniversary and while this policy is kept in full force, we cannot cancel the policy; nor can we increase the premiums . . . . We cannot reduce benefits because of a change to a more hazardous occupation; nor can we add any restrictive riders to this policy."

We agree that with respect to some policies, Appleman's is a correct articulation of coverage. We note, however, that occupational disability policies can be written in different ways. As such, insofar as these policies become the subject of judicial decisions, each decision must be understood and limited in application by the language of the specific policy. There are some policies, for example, that explicitly define "occupation" in a particular way or expressly provide that in determining whether an insured can collect total disability, the relevant occupation is that which the policyholder is performing at the time he becomes disabled. See, e.g., *Shapiro* v. *Berkshire Life Ins. Co.*, 212 F.3d 121, 123 (2d Cir. 2000) (" '[Y]our occupation' is limited to 'the occupation you are engaged in immediately preceding the onset of disability' "); *Blasbalg* v. *Massachusetts Cas. Ins. Co.*, 962 F. Supp. 362, 363-364 (E.D.N.Y. 1997) ("Work means [1] your regular occupation, trade, or profession; and [2] as such exists at the start of any period of disability for which a claim for benefits is made under this policy"); *Yahiro* v. *Northwestern Mut. Life Ins. Co.*, 168 F. Supp. 2d 511, 513 (D. Md. 2001) ("The words 'his occupation' means the occupation of the Insured at the time he becomes disabled. If the Insured is regularly engaged in more than one occupation, all of the occupations of the insured at the time he becomes disabled will be combined together to be 'his occupation' ").

The policy language analyzed in the foregoing cases is not present here. Even if we accept as reasonable Berkshire's interpretation that the "non-cancellation" provision of the policy (see note 6, *supra*) means that an insured's occupation should be determined at the time of disability because the insured could change occupation without penalty, we do not find such an interpretation to be the only fair reading of the policy. Indeed, absent the type of policy language analyzed above, a fair understanding of the policy here is that McLaughlin contracted for coverage of the specific occupation of "chiropractor." This conclusion is consistent with the principle that occupational disability policies may be designed to "protect the insured's investment in a particular set of skills." *Giampa*, 73 F. Supp. 2d at 27. See *Niccoli* v. *Monarch Life Ins. Co.*, 70 Misc. 2d 147, 149 (N.Y. Sup. Ct. 1972) (occupational disability policy "indemni-

fies the assured when he becomes disabled from performing substantially all the material acts necessary to his chosen profession"). See also *Dixon* v. *Pacific Mut. Life Ins. Co.*, 268 F.2d 812, 815 (2d Cir. 1959) (insured can seek protection against possibility that he can no longer pursue his "real" occupation; *Primavera* v. *Rose & Kiernan, Inc.*, 240 A.D.2d 842, 844 (N.Y. 1998) (finding insured totally disabled due to heart condition where he had specified "partner-managing" for accounting firm as his occupation, and concluding "[t]he fact that plaintiff may still have been able to perform the duties of an accountant does not . . . compel a contrary conclusion since a broad construction of the term 'occupation' is neither fair nor reasonable under these particular circumstances").

Since reasonable persons could differ in their interpretation of the policy regarding when McLaughlin's occupation should be determined, we find the policy ambiguous. See *Suffolk Constr. Co.*, 80 Mass. App. Ct. at 94. The ambiguous provision must be construed in favor of the insured. *French King Realty Inc.* v. *Interstate Fire & Cas. Co.*, 79 Mass. App. Ct. 653, 660-663 (2011). Thus, we conclude that the policy for which McLaughlin contracted should be interpreted as insuring him in the specified occupation of "chiropractor." That he was able to work as a nurse for the period in question does not preclude him from collecting total disability benefits. See *Giampa*, 73 F. Supp. 2d at 27 ("Because occupational disability policies are 'designed to indemnify against loss of capacity to work, not against loss of income,' the fact that a claimant derives a 'larger income from a new occupation will not bar recovery under his disability policy' "), quoting from *Niccoli* v. *Monarch Life Ins. Co.*, *supra* at 148.

*Conclusion.* Accordingly, so much of the judgment as dismisses the part of count II of the complaint alleging breach of contract due to Berkshire's failure to waive the elimination period is affirmed. See note 4, *supra*. The judgment is otherwise vacated. On count I, declaratory judgment shall enter in favor of McLaughlin. On that part of count II alleging breach of contract due to Berkshire's failure to pay benefits under the policy for the fourteen-month period at issue, judgment shall enter for McLaughlin. The case is remanded for further proceedings on the three remaining counts — breach of the implied covenant of

good faith and fair dealing and violations of G. L. c. 176D, § 3(9), and G. L. c. 93A.

*So ordered.*