690                         452 Mass. 690 (2008)

Finn *v*. National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

JOSEPH F. FINN, JR., assignee,[1] *vs.* NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA,
& another.[2]

Suffolk. October 8, 2008. - December 2, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, CORDY, & BOTSFORD, JJ.[3]

*Contract,* Insurance. *Insurance,* Coverage, Construction of policy, Intellectual
property exclusion. *Trade Secret.*

Discussion of the principles governing interpretation of coverage exclusions in
insurance policies. [695-697]
In a civil action brought against an insurer, seeking a declaration that, pursu-
ant to a professional liability policy that the insurer had issued to a certain
business that provided litigation support services (insured), the insurer had
a duty to defend and indemnify the insured for the settlement of a claim
brought against it by a third party (a law firm alleging that the insured,
which the firm had employed for certain matters, misappropriated trade
secrets of one of the firm's clients, thus causing the firm to forgo legal
fees), the trial judge did not err in granting summary judgment in favor of
the insurer, where the plain language of the policy's intellectual property
exclusion barred coverage [697-698], and where there was no indication in
the record that the third party's claim would have arisen in the absence of
the insured's conduct [698].

CIVIL ACTION commenced in the Superior Court Department on
July 1, 2005.

The case was heard by *Geraldine S. Hines,* J., on motions for
judgment on the pleadings and for partial summary judgment.

The Supreme Judicial Court granted an application for direct
appellate review.

*Steven L. Schreckinger (Jane M. Guevremont* with him) for
the plaintiff.

*John D. Hughes* for the defendants.

SPINA, J. This case requires us to construe an exclusion bar-

---

[1] Of Uniscribe Professional Services, Inc. (Uniscribe), for the benefit of its
creditors.

[2] A.I.G. Technical Services, Inc. (A.I.G.).

[3] Justice Greaney participated in the deliberation on this case prior to his
retirement.

ring coverage for "any claim arising out of any misappropriation of trade secret" in a professional liability policy issued by the defendant, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), to the plaintiff, Uniscribe Professional Services, Inc. (Uniscribe). After settling a claim with a client from whom sensitive documents were taken while in Uniscribe's care, Uniscribe commenced an action seeking a declaratory judgment that National Union had a duty to defend and indemnify Uniscribe for the settlement.[4] National Union moved for judgment on the pleadings, see Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), arguing that its policy excluded claims arising out of the misappropriation of trade secrets (intellectual property exclusion), wrongful acts committed with the knowledge that it was a wrongful act (knowing wrongful acts exclusion), and criminal acts (criminal acts exclusion). Uniscribe opposed National Union's motion and moved for partial summary judgment, seeking, inter alia, a declaration that the client's claims against Uniscribe were covered by National Union's policy. See Mass. R. Civ. P. 56, as amended, 436 Mass. 1404 (2002). A judge in the Superior Court concluded that while neither the knowing wrongful acts exclusion nor the criminal acts exclusion applied, the intellectual property exclusion precluded coverage. Judgment entered in favor of National Union on Counts I, II, and III.[5] Uniscribe appealed and we

---

[4]Uniscribe sought recovery of certain sums it already had paid pursuant to the settlement agreement and the remainder it was obligated to pay over a five-year period, as well as costs and fees incurred in negotiating the settlement of the claim.

[5]Count I sought a declaratory judgment that National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), was obligated to defend and indemnify Uniscribe. Count II alleged that National Union breached its contractual obligations under the policy by refusing to defend and indemnify Uniscribe. Count III claimed that National Union breached the implied covenant of good faith. Counts IV and V, which asserted that principles of waiver and estoppel precluded National Union from asserting that the knowing wrongful acts exclusion and the criminal acts exclusion applied, also were rejected by the judge, but no judgment was entered on these counts. The judge did not address Counts VI and VII, and the parties do not address them on appeal. We express no opinion concerning Counts VI and VII. Count VI, which claims that Uniscribe and its claims handler, A.I.G., violated G. L. c. 93A, § 11, alleges in part:

"The unfair and deceptive acts and practices committed by National Union and AIG include, but are not limited to, their assertion of the

granted its application for direct appellate review. We hold that the intellectual property exclusion bars coverage and now affirm.[6]

1. *Standard of review.* The parties' motions as to coverage, although brought under different rules,[7] addressed themselves to the same subject matter and were, as a practical matter, cross motions for summary judgment. See 5C C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1369, at 261-262 (3d ed. 2004) ("standard applied by the court appears to be identical under both [rule 12 (c) and rule 56] motions").

---

Wrongful Act and Criminal Act exclusions in this action pending in Massachusetts as a basis for denying coverage for the Jones Day claim, without having investigated the claim asserted by Jones Day against Uniscribe, which investigation would have demonstrated that the Wrongful Act and Criminal Act exclusions do not apply to the Jones Day claim."

Count VII, which alleges violation of the Connecticut Unfair Trade Practices Act, recited the same allegation as in Count VI, but also claims that National Union and A.I.G. "misrepresent[ed] that the newly added Intellectual Property Exclusion would not change the coverage provided under the policies previously written without the exclusion, and then applying the Exclusion in a manner that reduced coverage under the Policy."

[6]Because the intellectual property exclusion bars coverage, we find it unnecessary to address National Union's alternative argument that the criminal acts exclusion applies.

[7]A motion brought pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), is a motion to dismiss "argu[ing] that the complaint fails to state a claim upon which relief can be granted." *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974). All facts pleaded by the nonmoving party must be taken as true. *Jarosz* v. *Palmer, supra* at 530. "Judgment on the pleadings may be entered if a plaintiff fails to present sufficient facts in the complaint to support the legal claims made." *Flomenbaum* v. *Commonwealth*, 451 Mass. 740, 742 (2008).

A motion for summary judgment, although similar to a rule 12 (c) motion, does not challenge the validity of the pleading, but rather focuses on the merits of the controversy. *Smith* v. *Massimiano*, 414 Mass. 81, 85 (1993). A grant of summary judgment is appropriate when, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass. R. Civ. P. 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

The interpretation of an exclusion in an insurance contract presents a question of law. See *Fuller* v. *First Fin. Ins. Co.*, 448 Mass. 1, 5 (2006). While the insured bears the burden of establishing coverage, *Tumblin* v. *American Ins. Co.*, 344 Mass. 318, 320 (1962), the burden is on the insurer to establish the applicability of an exclusion. *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992).

2. *Facts.* The following facts are drawn from the complaint and supplemented by undisputed facts in the record.[8] Uniscribe provided records management, document imaging, and electronic printing services to law firms and corporations. National Union issued to Uniscribe an errors and omissions policy. Under the policy, National Union agreed:

> "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any claim or claims first made against the Insured and reported to the Company during the Policy Period for any Wrongful Act of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act first occurs during the Policy Period and solely in the conduct of the Insured's Profession as stated in Item 6 of the Declarations."

Item 6, which amended the last sentence of the coverage provision, states: "Soley [*sic*] in the performance of providing records management, document imaging, litigation support, graphics and trial support, and electronic printing services for others for a fee."

The policy defined "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the conduct of" Uniscribe's profession as specified above.

Indorsement 6 to the policy provided that coverage did not apply to "to any claim arising out of any misappropriation of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right."

In 2002, the Los Angeles office of the law firm Jones Day

---

[8]The facts disputed by the parties are not relevant to the disposition of this appeal.

hired Uniscribe to provide litigation support services in connection with the representation of its client, DirecTV. Three Uniscribe employees were assigned to work on the DirecTV case at the Jones Day office. Jones Day would not allow documents related to the DirecTV litigation to be removed from its office, and the employees signed agreements pledging to maintain the confidentiality of information entrusted to them by Jones Day.

In September, 2002, when the employees were unable to meet Jones Day's deadlines, a Uniscribe supervisor authorized an employee working on the DirecTV project to bring his nephew to assist the Uniscribe employees in meeting Jones Day's deadlines. The nephew worked for approximately ten days and was paid cash by his uncle, who recorded the nephew's hours as overtime. During this period, the nephew came across documents containing confidential trade secret information from DirecTV and sent that information to a Web site to help the "hacker" community.

In January, 2003, Jones Day notified Uniscribe of the disclosure. Uniscribe promptly notified National Union of the incident, indicating that Jones Day had written off a substantial legal fee for services it had performed for DirecTV and that Jones Day "may eventually look to [Uniscribe] to compensate them for this matter." National Union, through its claims handler, A.I.G. Technical Services (A.I.G.), disclaimed coverage based on the intellectual property exclusion.

In March, 2003, a Jones Day attorney wrote to Uniscribe, demanding that Uniscribe reimburse Jones Day for $1,471,992.84 in losses it had sustained as a result of the disclosure. In May, 2003, Uniscribe urged A.I.G. to reconsider its position that the intellectual property exclusion barred coverage. A.I.G. again disclaimed coverage.

By November, 2004, Jones Day's patience with Uniscribe's efforts to resolve the coverage dispute with National Union had been exhausted. Jones Day informed Uniscribe by letter that it would no longer defer pursuit of its claims against Uniscribe and gave Uniscribe five days to consider a settlement proposal under which Uniscribe would pay Jones Day $1.5 million over a five-year period. Uniscribe forwarded Jones Day's letter to A.I.G. A.I.G. did not respond. Given the time constraints on Jones

Day's offer and the anticipated costs of defending itself in litigation, Uniscribe negotiated a settlement agreement with Jones Day in which Uniscribe agreed to pay Jones Day $1,175,000 over five years.

3. *Discussion.* At issue is whether the intellectual property exclusion unambiguously excludes coverage where a third party has misappropriated a trade secret.[9] We conclude that it does.

In the interpretation of insurance contracts, we are guided by several well-established principles. "Language in an insurance policy must be given its ordinary meaning . . . and construed in the sense that the insured will reasonably understand to be the scope of his coverage." *Slater* v. *United States Fid. & Guar. Co.,* 379 Mass. 801, 803 (1980). Although an exclusionary clause is construed narrowly, see *Commerce Ins. Co.* v. *Betty Caplette Bldrs., Inc.,* 420 Mass. 87, 93 (1995), "[w]e are not free to revise it or change the order of the words." *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 147 (1984). Thus, "[a] policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Hyfer* v. *Metropolitan Life Ins. Co.,* 318 Mass. 175, 179 (1945), quoting *Stankus* v. *New York Life Ins. Co.,* 312 Mass. 366, 369 (1942). "If in doubt, we 'consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 518 (2005), quoting *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.,* 415 Mass. 844, 849 (1993).

We have considered whether the language of a particular exclusion extends to third-party conduct on two prior occasions. See *Bagley* v. *Monticello Ins. Co.,* 430 Mass. 454 (1999); *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co.,* 419 Mass. 316 (1995).

In *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermit-*

---

[9]Neither the judge below nor the parties on appeal address whether the nephew could be considered an "insured" under the policy. Under the policy, the term "[i]nsured means the individual, partnership, corporation or other entity named in Item 1 of the Declarations and shall include any partner, director, officer or employee thereof while acting within the scope of his duties as such." The policy does not define "employee." Therefore, we assume without deciding that the nephew was not an insured.

*age Ins. Co., supra,* we considered the applicability of an assault and battery exclusion under a special multi-peril policy providing coverage for "an accident . . . which results in bodily injury or property damage neither expected nor intended from the point of view of the insured." *Id.* at 318. The exclusion provided that an "[a]ssault and/or battery shall not be deemed an accident under the . . . policy, nothing in the policy to the contrary." *Id.* The underlying liability action involved the assault of a patron of a business serving alcohol by another patron. *Id.* The injured patron sued the business, alleging negligence in not providing adequate security. *Id.* at 317. We held that the insurer had a duty to indemnify the insured because the exclusion was "susceptible of at least two rational interpretations, the one placed on it by [the insurer], that the provision excludes any coverage for a negligence claim related to an assault and battery, and the other, the interpretation placed on it by [the insured], that the exclusion applies only to intentional damage caused by, or at the direction of, the insured, its agents, or its employees, and not to a negligence claim following an assault or battery committed by an unrelated third party." *Id.* at 322. In reaching this conclusion, we noted that assault and battery exclusions construed by other courts "typically use language stating that *any claim arising out of, or based on, an assault and battery* is excluded from coverage whether committed by or at the direction of the insured or third parties" (emphasis in original). *Id.* at 320 & n.4.

We reached the opposite result in *Bagley* v. *Monticello Ins. Co., supra,* which involved a suit by the victim of a brutal rape and beating by another patron to reach and apply insurance policy proceeds to satisfy a judgment she had obtained against the establishment. The exclusion in that case provided:

> "All coverage is excluded hereunder for any claim which arises wholly or in part out of allegations of violation of any federal, state, or local statute, ordinance, or law. This exclusion *shall specifically include but not be limited to* any sexual misconduct committed or alleged to have been committed by any Insured or Additional Named Insured" (emphasis added).

*Id.* at 456. We held that the exclusion "read as a whole, by its

clear and unambiguous language, [did] not limit its application only to the acts of those who are expressly insured, but rather operate[d] all inclusively." *Id.* at 457.

The relevant language of the intellectual property exclusion, "any claim arising out of any misappropriation of trade secret," requires us to decide whether the absence of any language as to whose acts may trigger the exclusion results in ambiguity. National Union, laying emphasis on the words "any claim arising out of," asserts that the exclusion unambiguously covers all claims alleging misappropriation of a trade secret. Uniscribe responds that the exclusion is silent as to whether it applies to third-party conduct and therefore is ambiguous.

The plain language of the intellectual property exclusion precludes coverage. "The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law." *Bagley* v. *Monticello Ins. Co., supra.* The breadth of the phrase "arising out of," in conjunction with the words "any claim," unambiguously encompasses claims based on third-party conduct. The expansiveness of the phrase "any claim arising out of" obviates the need to specify that the exclusion applies "whether committed by or at the direction of the insured or third parties." *Liquor Liab. Joint Underwriting Ass'n of Mass.* v. *Hermitage Ins. Co., supra* at 320. Cases from other jurisdictions are in accord.[10]

We need not consider Uniscribe's reasonable expectations as

---

[10]See *Kinsella* v. *Wyman Charter Corp.*, 417 F. Supp. 2d 159, 166-167 (D. Mass. 2006) ("any liability arising out of the ownership, maintenance, operation, use, entrustment to others, loading or unloading of any watercraft" unambiguously excluded liability even where insured did not own watercraft); *Capitol Indem. Corp.* v. *Blazer*, 51 F. Supp. 2d 1080, 1087-1089 (D. Nev. 1999) (exclusion barring coverage for "injury arising out of assault, battery or assault and battery" not ambiguous for omitting reference to third-party conduct); *Capitol Indem. Corp.* v. *L. Carter Post 4472 Veterans of Foreign Wars, Inc.*, 225 Ga. App. 354, 355 (1997) (same); *Gaspard* v. *Northfield Ins. Co.*, 649 So. 2d 979, 982 (La. Ct. App. 1994) (absence of specific language barring coverage for assault and battery by third parties in exclusion precluding coverage for damage "arising out of assault and battery, or out of any act or omission in connection with the prevention or suppression of an assault and battery," did not render exclusion ambiguous); *Hunt* v. *Capitol Indem. Corp.*, 26 S.W.3d 341, 344 (Mo. Ct. App. 2000) (exclusion barring coverage for "injury arising out of assault, battery or assault and battery" included assault and battery committed by third parties); *Stafford* v. *T.H.E. Ins. Co.*, 309 N.J. Super. 97, 104-105 (1998) (exclusion barring coverage for injury "arising out

the plain language of the intellectual property exclusion unambiguously precludes coverage. See *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund*, 445 Mass. 502, 518 (2005); 1 B.R. Ostrager & T.R. Newman, Insurance Coverage Disputes § 1.03[b], at 34 (14th ed. 2008) ("The application of the reasonable expectations doctrine is typically limited to cases in which the policy is ambiguous and the mutual intent of the parties cannot be determined").[11]

A more difficult issue is whether the injury suffered by Jones Day arose out of the nephew's misappropriation of DirecTV's trade secrets. Uniscribe contends that Jones Day's damages (consisting primarily of forgone legal fees) are not the sort of damages normally sought in a misappropriation claim, and consequently the requisite causal connection between the prohibited conduct and injury is lacking. As we noted in *Bagley* v. *Monticello Ins. Co.*, *supra* at 457, "arising out of" denotes "a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectionable underlying conduct." While Uniscribe's argument has some force, there is no indication in the record on appeal that Jones Day would have incurred any loss in the absence of the nephew's misappropriation. Thus, we conclude that Jones Day's claim arose out of the nephew's misappropriation.

4. *Conclusion.* For the foregoing reasons, we affirm the order allowing National Union's motion for judgment on the pleadings and denying Uniscribe's motion for summary judgment. Because National Union had neither a duty to defend nor a duty

of or caused in whole or in part by an assault and/or battery . . . irrespective of whether the claim alleges negligent hiring, supervision and/or retention against the insured or any other negligent action" encompassed battery committed by third parties); *Berg* v. *Schultz*, 190 Wis. 2d 170, 179 (Ct. App. 1994) (exclusion disclaiming coverage for injury "arising out of Assault and/or Battery" unambiguously applied to third-party conduct).

[11]Similarly, the judge correctly ruled that, where the policy contained a merger provision that stated the policy contained the entire agreement of the parties, and where the intellectual property exclusion was not ambiguous, parol evidence would not be considered to vary the meaning of that exclusion. See *Imper Realty Corp.* v. *Riss*, 358 Mass. 529, 534-535 (1970); *Kesslen Shoe Co.* v. *Philadelphia Fire & Marine Ins. Co.*, 295 Mass. 123, 129 (1936).

to indemnify Uniscribe under the policy, Uniscribe's request for attorney's fees is denied. The case is remanded to the Superior Court for further proceedings on Counts VI and VII of the amended complaint.

*So ordered.*