NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1027                                              Appeals Court

            DOUGLAS SCOTT LESTER & another[1]  vs.  OLD REPUBLIC TITLE
                            INSURANCE COMPANY.


                            No. 24-P-1027.

        Bristol.     October 9, 2025. – April 10, 2026.

            Present:  Ditkoff, D'Angelo, & Wood, JJ.


Real Property, Title insurance, Ownership, Boundary, Deed.
     Insurance, Title insurance, Coverage, Defense of
     proceedings against insured, Construction of policy.
     Contract, Insurance, Construction of contract.  Way.
     Practice, Civil, Summary judgment, Consumer protection
     case, Reconsideration, Amendment.  Judgment, Amendment.
     Consumer Protection Act, Insurance.




        Civil action commenced in the Superior Court Department on
March 4, 2022.

        The case was heard by Jackie Cowin, J., on motions for
summary judgment, and motions for reconsideration and to amend
the judgment also were considered by her.

        John O. Postl for the plaintiffs.
        Shannon F. Slaughter for the defendant.


_____

        [1] John Tyler Mandeville.

D'ANGELO, J.  The plaintiffs purchased a piece of property in Westport in 2013.  They also secured a title insurance policy (policy) from the defendant Old Republic Title Insurance Company (Old Republic).  The policy described the insured property primarily based on the description offered in the land's deed.  Six years later, the plaintiffs were sued by neighbors in connection with a stone wall adjacent to the property, and Old Republic refused to defend the plaintiffs in that suit.  A Superior Court judge determined that the land under the stone wall was part of the plaintiff's property pursuant to the derelict fee statute, G. L. c. 183, § 58 (statute).  In the subsequent lawsuit commenced against Old Republic that gave rise to this appeal, a different Superior Court judge declared that the defendant did not wrongfully deny coverage and entered summary judgment for the defendant on all of the plaintiffs' claims.  The judge then denied postjudgment motions by the plaintiffs for reconsideration and to amend the judgment.  We affirm.

Background.  The plaintiffs purchased a property on Hillcrest Acres Lane in Westport in 2013.  In connection with this purchase, the plaintiffs secured a title insurance policy from the defendant.  The policy described the land which the defendant contracted to insure, using language derived from the property's deed.  It stated that the insured land was sited "on

the northerly side of Hillcrest Acres Lane, so called, (private way - min 40 feet wide)." The policy also enumerated specific covered risks and exclusions.

In 2019, the plaintiffs were sued in Superior Court by the owners of the adjacent lot, the Dromskys, regarding the plaintiffs' restoration of a stone wall located south of the metes and bounds of the land as described in both the deed and the policy (Dromsky action). The plaintiffs filed a claim with the defendant under the policy to defend them in the Dromsky action. The defendant denied representation, claiming that the land under the stone wall was outside the policy's coverage.

On cross motions for summary judgment in the Dromsky action, a judge entered judgment for the instant plaintiffs on the claims regarding the stone wall. The judge held that the plaintiffs owned in fee simple the land under the stone wall, by operation of the statute.

The plaintiffs filed this suit on March 4, 2022, seeking declarations that the policy afforded coverage to the land under the stone wall, that the defendant violated the policy by denying representation to the plaintiffs in the Dromsky action, and that the plaintiffs were entitled to reimbursement of all legal fees spent in defense thereof. The plaintiffs also asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and

violations of G. L. c. 176D.  On cross motions for summary judgment, a Superior Court judge denied the plaintiffs' motion for summary judgment and allowed the defendant's cross motion for summary judgment.  The plaintiffs subsequently filed (1) a motion for reconsideration, claiming that the judge erred in not applying the statute to the policy's description of insured land; and (2) a motion to amend the judgment, claiming that plaintiffs' counsel had been unaware of 940 Code Mass. Regs. § 3.16 (1993), and alleging that this regulation created liability for the defendant under G. L. c. 93A.  Both motions were denied.

Discussion.  1.  Summary judgment.  The plaintiffs challenge the entry of summary judgment for the defendant, arguing that the judge erred by holding that the policy did not insure the land under the stone wall, pursuant both to the plain terms of the policy and by operation of the statute.  We discern no error.

Summary judgment is appropriate if, "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted).  Dorchester Mut. Ins. Co. v. Miville, 491 Mass. 489, 492 (2023).  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "If the moving party establishes the absence of a triable issue, the

party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat a motion for summary judgment" (citation omitted).  Barbetti v. Stempniewicz, 490 Mass. 98, 116 (2022).  Our review of a judge's grant of summary judgment is de novo.  Miville, supra.

We also review the judge's interpretation of the terms of the policy de novo.  See Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017).  See also Save-Mor Supermkts., Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971) (rules of contract interpretation apply generally to interpretation of insurance policy).  "When contract language is unambiguous, it must be construed according to its plain meaning."  Balles, supra at 571-572.  And in determining "whether the language at issue is ambiguous, we look both to the contested language and to the text of the contract as a whole."  Id. at 572.

a.  The terms of the policy.  i.  Description of coverage. Exhibit A of the policy is a legal description of the insured property, describing that land as located "on the northerly side of Hillcrest Acres Lane, so called, (private way - min 40 feet wide)."  Thus, the language detailing the boundaries of the property to be insured, and agreed to by all contracting parties, unambiguously frames that coverage as ceasing at the border of Hillcrest Acres Lane; more specifically, a Hillcrest

Acres Lane that is at least forty feet wide.  The land under the stone wall lies beyond the described boundaries of the insured property.

The plaintiffs invite us to apply the presumption codified in the statute[2] to the terms of the policy, asserting that doing so would expand the boundaries of the policy to cover the land under the stone wall.  We decline to so broaden the statute, as this expansion would contradict the statute's language and purpose.

Prior to enactment of the statute, courts applied a common-law presumption that "a deed bounding on a way conveys the title to the centre of the way if the grantor owns so far."  Rowley v.

---

[2] The derelict fee statute, G. L. c. 183, § 58, states in full:

"Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, watercourse or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line."

Massachusetts Elec. Co., 438 Mass. 798, 803 (2003), quoting
Gould v. Wagner, 196 Mass. 270, 275 (1907).  By enacting the
statute in 1971, the Legislature superseded this common-law
presumption with "an even stronger presumption in favor of
vesting title in abutters."  Rowley, supra at 804.  That
statutory presumption stands "unless the instrument of
conveyance evidences a different intent" (quotation and citation
omitted).[3]  Id.  The purpose behind this "authoritative rule of
construction" was to "quiet title to sundry narrow strips of
land," the fee interest of which prior grantors had "unknowingly
failed to convey" (citation omitted).  Id. at 803.

The statute's language, zeroing in as it does on the
interpretation of any "instrument passing title to real estate"
(emphasis added), G. L. c. 183, § 58, does not mandate a
corollary presumption be applied to title insurance policies.
Application of the statute is limited to instruments passing fee
interests to real estate abutting a way, as we will not
contravene the plain text of a statute to contradict the plain
terms of a contract.

ii.  Exclusions.  In what appears to be a drafter's
abundance of caution, the exclusion mandates the same result.
The policy's Schedule B excludes coverage for disputes regarding

---

[3] The statute recognizes two exceptions, neither relevant
here.  G. L. c. 183, § 58.

"[t]itle to and rights of the public and others entitled thereto in and to those portions of the insured premises lying within the bounds of Hillcrest Acres Lane and the adjoining streets and ways."  The land under the stone wall is within those bounds. In assessing this exclusion, we are mindful that "an exclusionary clause is construed narrowly," Finn v. National Union Fire Ins. Co. of Pittsburgh, Pa., 452 Mass. 690, 695 (2008); and, where ambiguity exists, "the insured is entitled to the benefit" of the more favorable interpretation (citation omitted).  Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 281 (1997).

The exclusion in Schedule B expressly concerns land "lying within the bounds of Hillcrest Acres Lane."  We accept the Dromsky action judge's conclusion that the summary judgment record in that case established Hillcrest Acres Lane as "a private, single-lane road approximately ten (10) to twelve (12) feet in width."  We also accept that the land under the stone wall is located "north of [Hillcrest Acres Lane]" and "south of . . . the metes and bounds description . . . of the property." Furthermore, we acknowledge the potential for confusion and incorrect assumptions arising from a policy which excludes land within the bounds of a way and a stone wall that visually does not seem to be within those bounds at all.  Schedule B nevertheless excludes coverage of the land under that stone

wall.  This is because the policy, per its plain and unambiguous terms, construes Hillcrest Acres Lane to be at least forty feet wide, and as neither party disputes, the land under the stone wall lays inside that width.

Thus, we cannot endorse the plaintiffs' contention that "reasonably intelligent persons" reading the policy as a whole would interpret Schedule B's description of the road to tacitly ascribe a width inconsistent with the width expressly stated in the policy's only other reference to that same road (citation omitted).  Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass. App. Ct. 29, 36 (2008).  See id. ("[p]rovisions are not ambiguous simply because the parties have developed different interpretations of them").

This lack of ambiguity also defeats the plaintiffs' implication that they, like other "consumers," "would think that their title insurance policies protect all the land that they own."  An argument that the reasonable expectations of the insured mandate a particular interpretation of the policy's terms will not survive where "there is neither an ambiguity in the policy, nor are the terms in the policy 'bizarre or oppressive.'"  LaFrance v. Travelers Ins. Co., 32 Mass. App. Ct. 987, 988 (1992), quoting Markline Co. v. Travelers Ins. Co., 384 Mass. 139, 142 (1981).

"When the words of a contract are clear, they control, and we must construe them according to their plain meaning, in the context of the contract as a whole." Lieber v. President & Fellows of Harvard College (No. 2), 488 Mass. 816, 823 (2022). And "[a]lthough an exclusionary clause is construed narrowly, [w]e are not free to revise it" (quotation and citations omitted). Finn, 452 Mass. at 695. Schedule B excludes the land under the stone wall.

iii. Covered risk number twenty-three. The plaintiffs' argument, that "Covered Risk No. 23" contains ambiguity and must therefore be resolved against the defendant, is unpersuasive. That provision promises coverage where "[Plaintiffs] are forced to remove [their] existing structures which encroach onto an Easement or over a building set-back line, even if the Easement or building set-back line is excepted in Schedule B." The policy's stated definitions of "Easement" ("the right of someone else to use the Land for a special purpose") and "Land" ("the land or condominium unit described in paragraph 3 of [Exhibit] A and any improvements on the Land which are real property"), render unambiguous that Covered Risk No. 23 applies exclusively to structures located on the insured land described in Exhibit A -- which does not include the land under the stone wall. See Balles, 476 Mass. at 571.

The land under the stone wall and at issue in the Dromsky action was outside the bounds of the property as described in the policy, and inside the bounds of Hillcrest Acres Lane as described in the policy. To restate, the land under the stone wall is unambiguously nowhere to be found in the policy's coverage. The judge correctly declared that the defendant did not owe the plaintiffs a defense in the Dromsky action.

c. Other claims. As the policy did not cover the land under the stone wall, we discern no error in the judge's declaration that the defendant did not owe the plaintiffs a defense in the Dromsky action. Furthermore, the judge correctly held that the defendant did not commit a breach of contract, did not commit a breach of the covenant of good faith and fair dealing, was not unjustly enriched, and did not violate G. L. c. 176D. We therefore affirm summary judgment for the defendant on those claims.[4]

2. Postjudgment motions. The plaintiffs' claim that the judge abused her discretion in denying their motions for reconsideration and to amend the judgment is likewise unavailing.

A motion for reconsideration may be granted in the discretion of the judge upon a showing of "changed

---

[4] For that reason, the plaintiffs' request for attorney's fees is denied.

circumstances" or "particular and demonstrable error in the original ruling or decision."  Audubon Hill S. Condominium Ass'n v. Community Ass'n Underwriters of Am., Inc., 82 Mass. App. Ct. 461, 470 (2012).  The judge's determination that the statute did not apply to the policy was not error, and so there was no abuse of discretion in denying this motion.

We likewise review the judge's ruling on the plaintiffs' motion to amend judgment for an abuse of discretion, and also find none here.  R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 435 Mass. 66, 79 (2001).  Even if the plaintiffs could effectively argue for amendment on the basis that counsel was "unaware" of 940 Code Mass. Reg. § 3.16,[5] the plaintiffs cannot substantiate a claim under G. L. c. 93A.[6]  The plaintiffs assert that the defendant should have disclosed that "the land insured

---

[5] Title 940 Code Mass. Regs. § 3.16, states in relevant part:

"Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M. G. L. c. 93A, § 2, if: . . .

"(2) Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction . . . ."

[6] General Laws c. 93A, § 2 (a), states:

"Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

under the [p]laintiffs' policy was not coextensive with the land they owned in fee simple by virtue of the Derelict Fee Statute," arguing here that the defendant "is or should be aware" of the statute.  However, the duty to disclose under c. 93A extends only to "material facts known to a party at the time of a transaction."  Underwood v. Risman, 414 Mass. 96, 99 (1993).  There is no liability based on "a suspicion or a likelihood, rather than knowledge."  Id. at 100.  There is thus no colorable dispute that the defendant failed to disclose a material fact, and the judge's denial of the motion to amend judgment was not an abuse of discretion.

Conclusion.  The judgment is affirmed.  The order denying the motion for reconsideration is affirmed.  The order denying motion to amend the judgment is affirmed.

So ordered.

WOOD, J. (concurring).  I agree with the majority that the title insurance policy (policy) in this case insured only the land "on the northerly side of Hillcrest Acres Lane, so called, (private way - min 40 feet wide)," which is north of the stone wall that is the subject of the lawsuit at issue here.  Exhibit A of the policy describes the insured land more fully as "Lot 13 on 'Definitive Plan Westlook Farms in Westport, Mass. . . . [W]hich said plan is recorded in the . . . Registry of Deeds in Plan Book 111, Page 170."  An exceptionally diligent property owner could view this plan in the registry of deeds and see a graphic representation of the described property.  Because that is sufficient to resolve this case, I concur in the result.

Nevertheless, I think it is understandable that the appellant property owners may have had a legitimate reason to be confused about the scope of their policy for two reasons.  First, both the policy and the plan relied on "Hillcrest Acres Lane, so called, (private way - min 40 feet wide)" to describe the southern boundary of the appellants' land.  That Hillcrest Acres Lane is both imaginary and wider than the real, ten-foot-wide Hillcrest Acres Lane that lies within its boundaries and south of the stone wall.  In short, the plaintiffs might have believed that the policy described the insured property as extending to the real Hillcrest Acres Lane.  Second, pursuant to the derelict fee statute (statute), G. L. c. 183, § 58, the

plaintiffs actually owned the land on which the stone wall was located, in fee simple.  Accordingly, I think the plaintiffs might reasonably have assumed, albeit erroneously, that the policy would cover all of their land, including the stone wall.

I believe this case identifies a problem worth addressing.  I also think there is a relatively straightforward solution.  I suggest that the Legislature or the Commissioner of the Division of Insurance should follow the lead of California and enact a legal requirement that, "[w]hen a title company insures an owner's title to property, by implication it likewise insures the presumed ancillary titles and privileges attached to the property and assumes liability for defects in those titles and privileges."  Murray v. Title Ins. & Trust Co., 250 Cal. App. 2d 248, 252 (1967).  In this case, for example, Old Republic should have been aware that there was a narrow strip of land between the plaintiffs' deeded land and the actual way -- Hillcrest Acres Lane -- that ran along its southern border, and so, when the plaintiffs acquired their land, they also acquired ancillary title to that narrow strip of land pursuant to the statute.  Cf. id. at 256-257 ("Coverage of title insurance extends to reasonably anticipated implications of ownership which attach to the insured property by reason of the record").  Indeed, this seems especially reasonable to assume given that title insurance companies are in the business of insuring title to land.

This solution is consistent with the purpose of the statute: "to meet a situation where a grantor has conveyed away all of his land abutting a way or stream, but has unknowingly failed to convey any interest he may have in land under the way or stream, thus apparently retaining his ownership of a strip of the way or stream." Rowley v. Massachusetts Elec. Co., 438 Mass. 798, 803 (2003), quoting 1971 House Doc. No. 5307. The statute sought to quiet title to these "sundry narrow strips of land that formed the boundaries of other tracts." Rowley, supra. Quieting title, in turn, establishes clear ownership of land and an incentive to maintain it. Requiring that title insurance policies extend to ancillary title provided by the statute would complement this incentive.

The dispute at the center of this case illustrates the value of requiring that title insurance policies extend to ancillary property adjacent to public ways. The plaintiffs wanted to repair a stone wall that had been on the southern edge of their property since at least 1938. But their neighbors sued to prevent this based on an assertion of a private easement, which was ultimately deemed invalid. The plaintiffs were engaged in precisely the sort of behavior that public policy should encourage. Owners of property along public ways should not be discouraged from improving that property by fear of the

costs of defending against spurious challenges to their title by neighbors.